[No. 3370.   June 10, 1930.]

[Rehearing Denied July 17, 1930.]

PINO v. OZARK SMELTING & MINING CO.

[290 Pac. 409.]

James G. Fitch, of Socorro, for appellants.

Lorenzo T. Pino, of Socorro, in pro. per.

OPINION OF THE COURT

WATSON, J.

Both employee and employer, hereinafter referred to as plaintiff and defendant, respectively, have appealed from a judgment under the Workmen's Compensation Act (1929 Comp. § 156—101 et seq.), awarding to the former (who was admittedly injured in the course of his employment, and whose weekly wage was $24.50) compensation for 100 weeks at $6.12½, and $350 for facial disfigurement.

Defendant objects that the evidence was insufficient to establish that the total blindness of one eye for which the compensation was awarded was proximately caused by the injury. Plaintiff objects to the 50 per cent. reduction made in the compensation because of plaintiff's failure to use a safety device furnished by defendant. 1929 Comp. § 156—107.

A jury was impaneled in the cause and rendered two special verdicts: First, "that the admitted accident to plaintiff's right eye did cause his blindness"; and, second, "that the plaintiff is seriously, permanently disfigured about the face or head because of the admitted accident." The jury was not called upon to decide the issue as to failure to use safety device. No question is raised as to disfigurement.

It is the defendant's contention that the first of the above-mentioned special verdicts is not supported by substantial evidence, but is based upon mere conjecture.

We do not question defendant's contentions that the burden was on plaintiff to establish that the injury was the proximate cause of blindness; and that a possibility or mere conjecture would not be sufficient to support the special verdict. The question we shall consider is whether the jury could reach that conclusion by reasonable inference.

On September 1, 1926, the eye was hit and cut or abrased by a piece of rock flying from a hammer with which plaintiff was breaking ore. By the following May a cataract was well developed and by July was mature, causing total blindness. These facts are undisputed.

But defendant contends that there was no causal connection between the injury and the cataract. He relies on the testimony of two physicians, one of whom treated and observed plaintiff for six weeks following the accident, and the other of whom examined him at the time of the trial in October, 1927, and both of whom were of the opinion that the injury did not directly or by infection extend to the lens, and hence could not have produced cataract. Two other physicians, testifying for plaintiff, were of opinion that the injury might have produced it.

Perhaps, upon the opinion evidence alone, there would be warrant for defendant's contention that it would support only a conjecture as to the cause of the cataract. But there were other facts which the jury might consider. Traumatic cataract is of frequent occurrence. No one suggested any cause for this cataract other than the wound. The time sequence is favorable to plaintiff's theory. He testified that he had suffered no other injury, had never previously had trouble with the eye, and that, so far as he knew, it was normal, and that he hadn't "seen anything with it" since the injury, that it pained him a good deal, and required covering with bandage or dark glass for three months. One physician was of opinion that such facts indicated infection.

If the jury believed plaintiff's testimony it could not reasonably reach any different conclusion than it did. It was not compelled to reject this testimony for that of the physician who treated him and testified that there was no penetration or infection of the lens and only a slight and temporary impairment of the vision; nor for that of the physician who, from an examination of the eye thirteen months after the injury, opined that there was no penetration or infection of the lens, and hence, theoretically, no causal connection between the trauma and the cataract.

Finding no reason to disturb the judgment on the grounds assigned by defendant, we pass to plaintiff's appeal.

Failure to use the safety device was not pleaded. Plaintiff objected on that ground to evidence of it. He did not claim surprise or unpreparedness. He merely excepted and proceeded to try the issue. Nothing indicates that he was put to disadvantage. Under these circumstances we conclude that the judgment should not be disturbed. This is not an ordinary civil action. Technical rules of pleading and of procedure are not necessarily controlling. The act creates "a new right and special procedure." 1929 Comp. 156—105. It is designed to afford an informal and inexpensive procedure. Gonzales v. Chino Copper Co., 29 N. M. 228, 222 P. 903; De Lost v. Phelps Dodge Corp., 33 N. M. 15, 261 P. 811.

"The trial of such cause, either by jury or by the court, shall be conducted in a summary manner as far as possible."

1929 Comp. § 156—113. It would be to ignore the spirit of the act to notice a technical error not shown to have been prejudicial.

Plaintiff contends that the partial defense here in question amounts to one of contributory negligence or assumption of risk and is controlled by the provision of 1929 Comp. § 156-106:

"* * * Such defenses shall remain only in cases where the workman is not bound by the provisions of this act and the employer has filed the undertaking or certificate required by section 3 (146-103) hereof."

We find no merit in this contention.

Nor do we find anything in the statute or in any decision supporting plaintiff's contention that the 50 per cent. reduction is to be exacted only in case of failure to use a device which the law requires the employer to furnish.

Plaintiff contends finally that the evidence does not warrant holding the goggles to have been a reasonable safety device. There was evidence that the men refused to wear them in the belief that the glass increased rather than lessened the hazard; that in one instance a glass had

been broken, though no injury resulted; that soon after plaintiff's injury the use of glass goggles was abandoned for wire goggles. But there was also evidence that the use of the goggles was well calculated to prevent such injuries as that suffered by plaintiff; that the real reason the men objected to them was that they were hot, would sweat and interfere with vision; that the goggles were so constructed that upon the breaking of the glass it would fall outward and cause no injury. Certainly the purpose of furnishing them was to promote safety, and the court, in concluding that it was a reasonable requirement, is well within the evidence.

Finding no error in this judgment, it will be affirmed, and the cause will be remanded. It is so ordered.

PARKER and CATRON, JJ., concur.

BICKLEY, C. J. and SIMMS, J., did not participate.