**42 P.(2d) 775**

### JANES v. AGUADERO CORPORATION et al.

#### No. 4078.

Supreme Court of New Mexico.

March 18, 1935.

George A. Shipley, of Alamogordo, for appellants.

J. C. Gilbert, of Roswell, for appellee.

WATSON, Justice.

This appeal is from an award of compensation to a workman. The theory of the judgment is that the disability (blindness resulting from optic atrophy) is the result of a previous fall. The sole question here is whether there is substantial evidence of a causal connection between accident and disability. In this consideration the evidence should be stated as favorably as possible in

support of the special verdict that "Plaintiff's disability, and his suffering from atrophy and his blindness" were caused "by an accident. * * *"

On January 29, 1932, appellee, a man about fifty years of age, fell from a roof, alighting upon a small timber on the ground eight or ten feet below. The only injury of which he complained and for which he was treated, at the time, was the fracture of three ribs. In fact, however, on recovery from a period of unconsciousness, the duration of which is unknown, but which must have been a matter of minutes, he found himself dizzy, bleeding at nose and mouth, and with a headache which later "settled over" his eyes and lasted for three months.

Appellee's eyes or vision had not given trouble before the fall. By February 15, he noticed that they were failing. By March 10, he could not see to drive an automobile. The ailment progressed until July, when it reached the stage of practical blindness which was the condition at the time of the trial, June, 1934.

From this testimony of the appellee himself it must be taken that there was no direct injury to the eyes and no perceptible external injury about the head.

As we understand the causal theory sought to be developed, it is that of a thrombosis embolic; that is, that a blood clot formed at the site of the injury and broke up in particles, of which some, through the circulation, reached the immediate blood supply of the optic nerve, causing the condition which the experts agree in diagnosing as atrophy,

defined by Dr. Swearingen as "shrinking of the tissues of the optic nerve" and by Dr. Schuster as "drying up of the optic nerve."

This theory pertains to a specialized science, to an extent that it could scarcely be applied without the aid of expert testimony. Each side put forward an eye specialist. Appellee's expert, Dr. Swearingen, had examined and treated him from as early as March 26, 1932. He had definitely diagnosed the condition as optic atrophy. Asked the cause of this, he replied, and always replied, that he did not know.

Asked, "Assuming that he has had a lick about the head where it would cause—that is a fall from a distance of eight to ten or twelve feet, causing the blood to flow from his mouth and nose and lying unconscious, could it be possible that it resulted from that?" he said that some text-books he had read listed thrombosis embolic as a cause but did not comment upon it.

After having explained thrombosis embolic, he was asked, "Now should that condition affect this man and cause an atrophy of his optic nerve?" and replied, "I don't know."

He said he had had ten or twelve cases that appeared similar to this, but that none were traceable, and he had never seen one traceable, to an injury, but that all that he had seen were caused by "syphilis, or some nervous condition."

Asked, "If this man, doctor, had had good vision—in other words good eyes up to the time of an injury suffered on the 29th of January, and then you found him in the con-

dition you did on the 26th day of March, and he had had a violent lick of some kind on his head, or broken places in the ribs, would that —would you say that could create the condition of the indications of a secondary atrophy in this man's optic nerves?" he replied "I think it is better for me to say I don't know." Q. "You don't know?" A. "I don't know."

The witness admitted on cross-examination that, according to the text-books, optic atrophy from injury is very rare, and that systemic poisoning of some kind is the usual cause. He had directed appellee to have his teeth examined and also to have a general examination, pursuant to which two teeth had been extracted and a negative result had been obtained from a Wasserman test. The doctor said nothing as to the present condition of appellee's teeth. He admitted that the negative result of a Wasserman test was not regarded professionally as conclusive. Appellee himself testified that he had never had venereal disease and had no knowledge of it in his family.

It seems unnecessary to go into the testimony of Dr. Schuster, for the defense. He was definitely of the opinion that appellee's blindness was not caused by any injury, and that it was resultant from systemic poisoning.

The most that can be said for appellee's showing is that it embraces a possibility of thrombosis embolic, with the probabilities against it. The case is so different from Pino v. Ozark Smelting & Mining Co., 35 N. M. 87, 290 P. 409, that appellee's strong reliance on it is not warranted. This judgment is based on a theory of cause and effect strictly scientific in its nature. Appellee produced one witness qualified, but refusing to give an opinion. His testimony as a whole plainly shows why he was unwilling to support the theory advanced. Appellee's own testimony is valueless without scientific aid.

We conclude that the judgment should be reversed. The cause will be remanded, with direction to dismiss the proceeding.

It is so ordered.

SADLER, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.