76 P.2d 1

CHRISTENSEN v. DYSART et al.

No. 4317.

Supreme Court of New Mexico.

Jan. 22, 1938.

Rehearing Denied Feb. 16, 1938.

M. J. McGuinness, Joseph L. Dailey, and K. Gill Shaffer, all of Albuquerque, and M. G. Macneil, of Los Angeles, Cal., for appellants.

Harris K. Lyle, of Gallup, for appellee.

HUDSPETH, Chief Justice.

While in the course of his employment by defendant—appellant here—as carpenter, Chistian T. Christensen, the husband of plaintiff, slumped into a sitting position on the platform on which he had been standing while putting shiplap on a low roof, fell from the platform to the ground, receiving as a result of the fall two broken ribs, one of which pierced a lung, and a bruise on the head. He died in a few moments—whether before or after receiving the blow on the head and the injury to the ribs being one of the disputed facts. He had been complaining of heart trouble, and six weeks· to

two months before his death he had consulted a physician who diagnosed his trouble as coronary thrombosis, and advised him to remain in bed until he could get further medical advice. Appellant maintains that Christensen died of heart disease and that there is no substantial evidence to support the finding of the court that the injuries sustained in the fall caused the death. However, the first point argued is that the court erred in refusing to admit in evidence a contract between appellant as employer and Christensen as employee tendered for the purpose of showing that these parties had agreed not to be bound by the Workmen's Compensation Act, Comp. St.1929, § 156-101 et seq., and providing for a method of compensation agreed upon by the parties. Appellant states the proposition as follows:

"Because appellant and the deceased were operating under a written contract expressly agreeing not to be bound by the provisions of the New Mexico Workmen's Compensation Act, and making provision for certain employee benefits."

The maximum compensation under the contract was limited to one year. Appellant attempted to substitute a system of payments to the employee in case of his injury for those fixed by the Workmen's Compensation law. And while the contract contained a declaration that the provisions of the Workmen's Compensation Act, chapter 156, N.M.Comp.St.1929 and amendments thereof, "shall not apply to the relation of employer and employee hereby created,"

appellant's learned counsel conceded at the oral argument that that portion of the contract which attempts to set up a substitute scheme of compensation in lieu of the provisions of the Workmen's Compensation Act is void as against public policy. On the other hand, appellee admits that the New Mexico law gives parties an alternative between the compensation act and the common law, with the deprivation of three defenses formerly open to an employer. However, she maintains that the court properly excluded the contract because it is indivisible and unenforceable since under it the employee gave up both rights and the consideration was the employer's promise to pay a greatly reduced benefit. The consideration for Christensen to relinquish all his remedy was a single promise which in its entirety is conceded to be illegal. The section of the statute involved is section 156-104, N.M.Comp.St.1929, since repealed, see chapter 92, § 19, Laws 1937, the material part of which reads as follows:

"Every contract of hiring, verbal or written, made subsequent to the time this act takes effect, and every such contract made previous thereto and continued thereafter, shall be presumed to have been so made, or so continued, as the case may be, with reference to the provisions of this act, and unless there be as a part of such contract so made or continued an express statement in writing prior to any accident, either in the contract itself, or by written notice from either party to the other in substance that the provisions of this act are not in-

tended to apply, then it shall be conclusively presumed that the parties have accepted the provisions hereof and have agreed to be bound thereby and were working thereunder at the time of such injury."

 We have been referred to the English Employers' Liability Act which authorizes employers and employees by contract to substitute for the provisions of the compensation act, under certain conditions, another scheme of compensation or insurance. This is often referred to as "contracting out." In the case of Moss v. Great Eastern Railway Co., 2 K.B. 274, 2 B.W.C.C. 480, a scheme of contracting out was under consideration. Fletcher Molten, L. J., said:

" * * * That does not mean such portion of the arrangement as the parties elect to call the scheme; it must be the whole scheme. * * *"

In Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903, 904, we said:

"It may well be kept in mind that the theory upon which the Workmen's Compensation Acts of the several states were adopted was to substitute a more humanitarian and economical system of compensation for injured workmen or their dependents in case of their death; to provide a speedy and inexpensive method by which such compensation might be made to such employees or those dependent upon them which is more in harmony with modern methods of industry than the common-law liability for torts, which usually involves long, tedious, and expensive litigation, and often produced ill feeling between employer and employee. * * * With these elevating and progressive considerations which prompted the passage of this class of legislation in mind, we think a liberal construction in favor of a claimant under its terms should be favored, as the theory of the legislation is compensation, not the denial of it."

In Hughey v. Ware, 34 N.M. 29, 276 P. 27, 29, we said:

"It is the public policy of this state that, for such accident, compensation shall be made in a certain amount, to secure the injured employee against want, and to avoid his becoming a public charge."

While the effects on the public and the employer were given consideration, the main purpose of this legislation was to afford compensation for injuries and protection to employees engaged in hazardous occupations and to provide benefits to their dependents in case of death. It is not in keeping with the public policy of the state to countenance overreaching on the part of an employer in making contracts with his employees which deprive them of part of the compensation to which they would be entitled under the terms of the Workmen's Compensation Act. The only alternative is that fixed by statute, i. e., common-law rights and remedies within the limitations fixed by section 156-106, N.M.Comp.St.1929. Since the contract tendered is invalid and inseparable and clearly offends against the public policy of the state, we are constrained to hold that the court properly excluded it. It follows that the parties were bound

by the conclusive presumption provided by the statute quoted above that they were subject to the Workmen's Compensation Act.

 The second point relied upon for reversal is stated as follows:

"If appellant and the deceased Christensen were operating under the terms of the New Mexico Workmen's Compensation Act, then the appellee cannot recover, for the reason, among others, that the deceased died from natural causes and not from compensable injuries."

Appellant cites Pierce et al. v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017; Meldrum v. Southard Feed & Mill Co., 229 Mo.App. 158, 74 S.W.2d 75; McNamara v. Industrial Accident Comm., 130 Cal.App. 284, 20 P.2d 53; Stombaugh v. Peerless Wire Fence Co., 198 Mich. 445, 164 N.W. 537; 71 C.J. § 361, p. 605, and other authorities. These authorities seem to support appellant's theory that one who dies from heart disease cannot recover. In answering appellee's argument that the deceased died from injuries resulting from the fall, as found by the court, and that such injuries were occasioned by accident arising out of and in the course of Christensen's employment, the appellant's brief states:

"The argument overlooks the fact that the fall and the subsequent injuries sustained were caused by the heart attack and not by accident arising out of Christensen's employment."

While there is authority for this statement, the better rule appears to be against appellant's position. The Supreme Court of Ohio in Industrial Commission v. Nelson, 127 Ohio St. 41, 186 N.E. 735, 737, says:

"In a case before the Supreme Court of Illinois, Rockford Hotel Co. v. Industrial Commission, 300 Ill. 87, 132 N.E. 759, 19 A.L.R. 80, it was contended that an epileptic fit caused the workman to fall into a pit of hot cinders, and though so severely burned that he afterwards died, it was urged that the seizure was the direct cause of the injury and that it therefore did not arise out of his employment. The court in considering the question stated on page 89 of 300 Ill., 132 N.E. 759, 760, as follows: 'It is generally held by the English courts and the courts of this country that where the death of an employee results from a prior existing disease, like heart trouble or other impaired physical condition, while the workman was doing his ordinary work in the ordinary way, and there was no sudden, unusual or violent strain, it will not be considered an accidental death arising out of the employment within the meaning of the Workmen's Compensation Act.' Thereafter the court further said: 'He did not die from epilepsy or a pre-existing disease but from the burns he received from falling into the pit. Some cases hold that where an employee is seized with a fit and falls to his death the employer is not liable because the injury did not arise out of the employment; * * * but a majority of the courts, American and English, hold that if the injury was due to the fall the employer is liable even though the fall was caused by

a pre-existing idiopathic condition.' That court affirmed its position on the question in the recent case of Van Watermeullen v. Industrial Commission, 343 Ill. 73, 174 N.E. 846."

There are many late cases supporting this doctrine. See New Amsterdam Casualty Co. v. Hoage, 61 App.D.C. 306, 62 F.2d 468; President and Directors of Georgetown College v. Stone et al., 61 App.D.C. 200, 59 F.2d 875; Gonier v. Chase Cos., 97 Conn. 46, 115 A. 677, 680, 19 A.L.R. 83; Wicks v. Dowell & Co., L.R. [1905] 2 K.B. 225; Savage v. St. Aeden's Church et al., 122 Conn. 343, 189 A. 599; Texas Employers' Ins. Ass'n v. Shipley, Tex.Civ.App., 260 S.W. 646. In Hill v. Thomas S. Gassner Co., 124 Pa. Super. 217, 188 A. 382, 384, the court said:

"[2] Death in the ordinary course of employment, resulting from strain upon the heart caused by unusual exertion, is an accident within the meaning of the workmen's compensation statutes. * * * [3] On the other hand, death occurring while in the discharge of usual duties, in a normal manner without exceptional effort, is insufficient to establish a 'mishap' or 'fortuitous happening.' Gausman v. R. T. Pearson Co., 284 Pa. 348, 131 A. 247; Mooney v. Yeagle, 107 Pa.Super. 409, 164 A. 82; Pastva v. Forge Coal Min. Co., 119 Pa.Super. 455, 179 A. 919. [4] In the case at bar, the medical testimony was conflicting. But this court has held many times that on appeal its duty is not to weigh the evidence but to examine the record to determine whether there was competent evidence to support the conclusion of the referee and the board. Trimbath v. Penn Mut. Life Ins. Co., 119 Pa.Super. 371, 181 A. 383."

So in this jurisdiction the findings of fact made by the trial court are final and conclusive in so far as they are supported by substantial evidence. Gonzales v. Chino Copper Co., supra; De Lost v. Phelps Dodge Corp., 33 N.M. 15, 261 P. 811; Pino v. Ozark Smelting & Mining Co., 35 N.M. 87, 290 P. 409; New Mexico State Highway Department v. Bible, 38 N.M. 372, 34 P.2d 295; Janes v. Aguadero Corp., 39 N.M. 159, 42 P.2d 775. No good purpose would be served by an attempt to review the evidence in detail. The doctors differed, although one of appellant's witnesses, a doctor, testified that Christensen might have bled to death "if the punctured wound broke a large enough blood vessel." The undertaker testified that the pleural cavity was full of blood. The trial court saw and heard the witnesses. He knows how to evaluate evidence and to draw correct inferences from the facts. We are unable to say that his findings should be disturbed under the rule heretofore stated.

Appellant argues that because Christensen went to work after being advised by the doctor to remain in bed that he was guilty of willful misconduct, which bars recovery. Section 156-108, N.M.Comp. St.1929, provides:

"No compensation shall become due or payable from any employer under the terms hereof in event such injury was occasioned by the intoxication of such workman, or

wilfully suffered by him, or intentionally inflicted by himself."

While the court found that Christensen did not inform appellant that he was suffering from heart trouble, there is no evidence of deliberate deception on his part. As a matter of fact, it does not appear that he was advised as to the nature of his ailment. He was working in a sparsely settled section of the state some twenty-five miles from a CCC camp. He consulted the government doctor at this camp, who advised him to stay in bed until he could consult another doctor, but it does not appear that he told him he had heart disease. The doctor testified in part as follows:

"A. Well, from the history he gave me of the attack he had, I suspected it was disease of the coronary arteries, that is, disease of the arteries that provide the heart itself with blood.

"Q. Did you prescribe for him? A. No, sir; I gave him some nitro-glycerine tablets to take if he had one, and told him to see a private physician. His case required considerable care. I didn't propose to take care of this case, it wasn't my duty."

Christensen talked freely to the foreman and with his fellow workers of his illness. This is not a case of one obtaining employment under false pretenses or by misrepresentations as to the state of his health. Appellee, the widow of Christensen, testified that he had never complained of heart trouble before he entered the employ of the appellant. 28 R.C.L. 790, § 83, after quoting a definition of "willful misconduct," states:

"It will be perceived that the concept embodied in these words concerns the mental state of the party at the time of the calamity, and is the antithesis of the idea imported by the word 'accident.' The knowledge of employer or employee concerning the latter's peril, or the ability of either to foresee the calamity, is essentially a matter of fact and not of legal principle, and it is hardly possible that any two cases make the same showing in this respect."

In Gonier v. Chase Cos., supra, the facts are similar to those in the case at bar. The Connecticut court held that Gonier's conduct in working on a staging after being advised by his doctor to discontinue working in high places was not "willful and serious misconduct" within the meaning of the Workmen's Compensation Act defeating recovery for his death as a result of the fall. See, also, King v. Empire Collieries Co., 148 Va. 585, 139 S.E. 478, 58 A.L.R. 193; Burns' Case, 218 Mass. 8, 105 N.E. 601, Ann.Cas.1916A, 787; Twin Peaks Canning Co. v. Industrial Comm., 57 Utah 589, 196 P. 853, 20 A.L.R. 872. It appears from the evidence that Christensen's conduct was not such as to bring the case within the class in which recovery is barred by the statute.

Other points are argued, but we find them without merit, and for the reasons stated the judgment should be affirmed, and it is so ordered.

SADLER, BRICE, and ZINN, JJ., concur.

BICKLEY, Justice (concurring).

Appellant relies upon Brooker v. Industrial Accident Commission, 176 Cal. 275, 168 P. 126, L.R.A.1918F, 878, which held that: "Death of an employee from a fall from a proper scaffold, because of an epileptic seizure, does not arise out of his employment, within the meaning of the Workmen's Compensation Act."

The epileptic seizure was the sole cause of the fall. The court said: "There was nothing in the nature of the work which the deceased was doing at the time that had any tendency to bring on a fit of epilepsy." The court went on to say: "A distinction is to be made between cases of this character, and those where the accident, though partly caused by the idiopathic condition of the employé, is due in part also to the overexertion of the employé in performing his work, or to the nature of the work or the appliances furnished to him with which to work, or to the lack of proper safeguards against the ordinary dangers of the place of work, the injury being sometimes greater because of his idiopathic condition. In those cases the injury is held to arise out of the employment. * * * Where the idiopathic condition and the employment are each contributing causes of the accident the employer is liable, but not where the idiopathic condition is the sole cause."

In the case at bar one of the findings of the court relied on by the plaintiff is: "That the nature of the work which the said Christensen was doing immediately prior to his death materially contributed to and caused him to slump down, and slip from the scaffolding where he was working, and to fall;" This was excepted to as not being sustained by the evidence.

No one testified as to seeing the deceased immediately before he slumped down on the platform. Defendant's witness, Patterson, testified that he and deceased were engaged in placing a board on the roof of the house and, "I heard him make a fuss, and he had done dropped his hammer and he was slipping down, like this (indicating)," and, further, "Q. When he made that noise, was he standing up? A. Yes, sir; when I looked around, he was slipping, and dropping his hammer. His hand was sliding down the roof. He sat down on the boards like that, (indicating) and turned over. I started to him, got about halfway to the scaffold, and by that time he was on the ground."

Part of the work of deceased was to pull up from the ground boards seven inches wide and sixteen feet long. The witness could not say whether he or the deceased pulled up the last board used before the fall. How much the witness' physical demonstration of the actions of the deceased at the time he slumped down on the platform may have aided the court in appraising the witness' verbal description I, of course, do not know. The circumstantial details in evidence produced conviction in the mind of the trial judge resulting in the finding heretofore quoted. I am not able to say there is no evidence to sustain the finding. If the fall of deceased and consequent in-

jury resulted in part from a diseased condition and in part from the nature of the work he was doing, the accident is nevertheless compensable.

I concur in the result.