## BALTIMORE & O. R. CO. v. CLARK, Deputy Com'r, et al.

### No. 3286.

Circuit Court of Appeals, Fourth Circuit.

June 13, 1932.

596

George W. P. Whip, of Baltimore, Md. (Allan S. Bowie, of Baltimore, Md., on the brief), for appellant.

Henry L. Wortche, of Baltimore, Md. (George Forbes, Henry Glick, Simon E. So-

beloff, U. S. Atty., and Charles G. Page, Asst. U. S. Atty., all of Baltimore, Md., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and WAY, District Judge.

PARKER, Circuit Judge.

This suit was brought in the court below to enjoin the enforcement of an award made by a deputy commissioner of the United States Employees' Compensation Commission in favor of the two dependent children of one Julius Ellis, a coal trimmer employed by the Baltimore & Ohio Railroad Company. The award was made under the Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 USCA §§ 901–950) and rested upon the finding by the deputy commissioner that Ellis died as the result of heat stroke sustained while in the service of the railroad company upon the navigable waters of the United States. The judge below affirmed the award of the deputy commissioner, and the railroad company has appealed. Three questions are presented for our consideration: (1) Whether the deputy commissioner had jurisdiction to make the award, the contention of appellant being that the injury which resulted in the death of Ellis occurred upon the land and not upon the navigable waters of the United States; (2) whether death resulting from heat prostration not due to unusual and extraordinary conditions in the employment is an accidental death compensable under the statute; and (3) whether the amount of the award was properly fixed under the applicable provision of the act.

On the question of jurisdiction, the facts are that Ellis was employed as a coal trimmer by the railroad company. On August 25, 1931, he was put to work trimming coal on vessels lying at the pier at Baltimore on navigable waters of the United States. He was required to work in the bunkers of the vessels, in close proximity to their engine rooms, in a dusty atmosphere and at a temperature considerably above that of the air outside. While so engaged he developed symptoms of heat prostration, which continued and became very violent during the following night. The next day he attempted to work in a coal pit on land, but became so ill that he was unable to proceed and was taken to the office of a physician and thence to a hospital, where on the following day he died as a result of heat prostration. The deputy commissioner found that he suffered from heat prostration "caused by and arising out of the circumstances of his employ-

ment" on August 25th, and that the attack of the 26th "culminating in prostration after comparatively moderate exertion for a short time in the open air" was in direct causal connection with the injury incurred on the 25th.

The contention of the company here, as it was in the court below, is that the injury which caused the death of Ellis occurred on land on the 26th and not while he was working in the vessels on the 25th. A careful study of the record convinces us, however, that the judge below and the deputy commissioner were correct in holding that the injury resulting in death was sustained on the 25th. As was well said by the judge: "We have no hesitation in concluding that the deputy commissioner was correct, on the evidence as a whole, in holding that decedent's death on August 27th was the direct result of what happened on the first day while decedent was working in the bunkers of the vessels, and that the more complete prostration on the following day, which culminated in his death, was merely a recurrent attack of the original prostration; in other words, that there was a direct causal connection between the illness of the first day and the death. The endeavor on the part of the company's physicians to belittle the first illness and to treat the two illnesses as wholly distinct is, we think, entirely unconvincing, and unsupported by any rational or natural inference from the proved facts of the case. The comparatively short period of time that elapsed between the first and second illness, together with the very small amount of moderate exertion which decedent made, all in the open air, on the second day before he completely collapsed, tend to negative the reasonableness of these physicians' diagnosis."

As the place of the injury resulting in death goes to the question of jurisdiction, we are not bound by the findings of the deputy commissioner with regard thereto. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. Where, however, the judge below, after considering the evidence, finds the facts in accordance with the findings of the deputy commissioner, we will not reverse such findings unless clearly wrong. Here we are satisfied that upon the evidence they were clearly right.

On the second point, the contention of the company is that heat prostration is necessarily due in part to conditions inherent in the individual affected and is not to be attributed to the conditions under which he is working, in the absence of evidence that it resulted from some unusual or extraordinary condition in his employment not naturally and ordinarily incident thereto. In support of this position the company relies upon the Maryland cases of Slacum v. Jolley, 153 Md. 351, 138 A. 244, 245, and Miskowiak v. Bethlehem Steel Co., 156 Md. 690, 145 A. 199. The contention is that because the injury occurred upon navigable waters within the state of Maryland, this court is bound to follow the Maryland decisions, and that even if not bound by them, the court should follow them as a correct statement of the rule of law applicable.

We think it clear that we are not bound by the Maryland decisions. In deciding whether or not an injury is compensable under the Longshoremen's and Harbor Workers' Compensation Act, we are interpreting a federal statute (44 Stat. 1424, 33 USCA § 902), which has a uniform operation throughout the United States and which "neither is nor can be deflected therefrom by local statutes or local views of common law rules." Lindgren v. U. S., 281 U. S. 38, 44, 50 S. Ct. 207, 210, 74 L. Ed. 686; Panama R. Co. v. Johnson, 264 U. S. 375, 392, 44 S. Ct. 391, 68 L. Ed. 748; Second Employers' Liability Cases, 223 U. S. 1, 51, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; U. S. v. Lindgren (C. C. A. 4th) 28 F.(2d) 725, 726.

And we think it equally clear that heat prostration resulting from the conditions of employment, as was found by the deputy commissioner in this case, is compensable under the statute without reference to whether there was any unusual or extraordinary condition in the employment not naturally and ordinarily incident thereto. The statute provides that "the term 'injury' means accidental injury or death arising out of and in the course of employment." 33 USCA § 902. It says nothing about unusual or extraordinary conditions; and there is no reasonable basis for reading such words into the statute. A workman who sustains heat prostration as the result of the working conditions under which he labors, has sustained an injury "arising out of and in the course of his employment"; and the fact that other workmen may not have been affected or that he may have been rendered more readily susceptible to injury than they were by reason of his physical condition cannot affect the matter. As was said by the Court of Appeals of New York in Hughes v. Trustees of St. Patrick's Cathedral, 245 N. Y. 201, 156 N. E. 665: "Heat prostration is an accidental injury arising out of and during the course of the employment, if the nature of

the employment exposes the workman to risk of such injury. Matter of Madura v. City of New York, 238 N. Y. 214, 144 N. E. 505. Although the risk may be common to all who are exposed to the sun's rays on a hot day, the question is whether the employment exposes the employee to the risk. Matter of Katz v. A. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401."

In the leading case of Ismay, Imrie & Co. v. Williamson, A. C. (1908) 437, 1 B. W. C. C. 232, in which it appeared that a trimmer employed to rake ashes from the furnace on a steamship had suffered a heat stroke and the contention was made that the stroke was due to his emaciated condition and low vitality, Lord Loreburn laid down the rule which we think properly applicable in such cases. Said he:

"My Lords, I agree with the judgment of the Court of Appeal.

"The county court judge has found that this man died from an accident. There does not seem to me reason for dissenting from that view.

"To my mind the weakness of the deceased which predisposed him to this form of attack is immaterial. The fact that a man who has died from a heat-stroke was by physical debility more likely than others so to suffer can have nothing to do with the question whether what befell him is to be regarded as an accident or not.

"In my view this man died from an accident. What killed him was a heat-stroke coming suddenly and unexpectedly upon him while at work. * * *."

■ The question as to whether heat stroke is to be deemed an accidental injury within the meaning of workmen's compensation acts has been frequently before the courts. In some cases distinction is made between injuries caused by natural and those caused by artificial heat; and in a few it is said that the injury must be caused by some unusual or extraordinary condition. The rule supported by the weight of authority, however, is that heat prostration which results from the employee's engaging in the employment, whether due to unusual or extraordinary condition or not, is to be deemed an accidental injury within the meaning of the statutes. Ismay v. Williamson, supra; Fenton v. Thorley, [1903] A. C. 443; Maskery v. Lancashire Shipping Co., 7 B. W. C. C. 428; Walsh v. River Spinning Co., 41 R. I. 490, 103 A. 1025, 13 A. L. R. 956; Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 104 A. 615, 13 A. L. R. 963; City of Joliet v. Industrial Comm., 291 Ill. 555, 126 N. E. 618; Kanscheit v. Garrett Laundry Co., 101 Neb. 702, 164 N. W. 708; King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086; Hughes v. Trustees of St. Patrick's Cathedral, supra; O'Pry v. Security Union Casualty Co. (Tex. Com. App.) 1 S.W.(2d) 590, 61 A. L. R. 216. And see notes 13 A. L. R. 979, 53 A. L. R. 1085 and cases there cited.

■ Such an injury is accidental in that it is unforeseen and unexpected. If it results from the conditions under which the work is carried on, there is no reason why it should not be held compensable. In such case, it is one of the casualties of the business; and it is the purpose of the compensation statutes to place the burden of such casualties upon the business and not upon the unfortunate employee. Wheeling Corrugating Co. v. Mc-Manigal (C. C. A. 4th) 41 F.(2d) 593, 595. Nor is it material that such injury would not have resulted but for the physical condition of the employee. His condition is to be deemed not the "cause" of the injury but merely a "condition" which enabled the "cause" to become operative. See Mutual Life Ins. Co. v. Dodge (C. C. A. 4th) 11 F. (2d) 486, 489, 59 A. L. R. 1290; New Amsterdam Casualty Co. v. Shields (C. C. A. 6th) 155 F. 54, 56. It is well settled that the fact that an employee is in a weakened or diseased condition does not bar his right to recover under workmen's compensation acts for accidental injury, even though, but for such weakened or diseased condition, the injury would not have occurred. See notes 19 A. L. R. 95 and 28 A. L. R. 204 and cases cited.

■ Of course, there can be no award of compensation under the act in the absence of evidence which justifies a finding that the injury arose out of and in the course of the employment. There was ample evidence here to sustain such finding, however; and, where there is such evidence, the courts are bound by the finding of the deputy commissioner, which relates, not to a jurisdictional but to an administrative matter. The rule applicable was stated by the Supreme Court, speaking through Mr. Chief Justice Hughes, in the recent case of Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 291, 76 L. Ed. 598, as follows: "Apart from cases involving constitutional rights to be appropriately enforced by proceedings in court, there can be no doubt that the act contemplates that as to questions of fact, arising with respect to injuries to employees within the purview of the act, the findings of the deputy commissioner, sup-

ported by evidence and within the scope of his authority, shall be final. To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert, and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task. The object is to secure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment, and the efficacy of the plan depends upon the finality of the determinations of fact with respect to the circumstances, nature, extent, and consequences of the employee's injuries and the amount of compensation that should be awarded.  *  *  * The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decisions sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments."

█ Coming to the third question, it appears that the deputy commissioner multiplied the daily wage which Ellis was receiving at the time of his injury by three hundred and divided the result by fifty-two to arrive at the weekly wage upon which compensation was based. In this we think there was error. The purpose of the statute is to award compensation on the basis of the earning power of the employee, and three methods are prescribed by it for determining this earning power. 33 USCA § 910. If the employee shall have worked in the employment during substantially the whole of the preceding year, his average annual earnings are ascertained, under subdivision (a), by multiplying his average daily wage by three hundred. If he shall not have worked in the employment during substantially the whole of the preceding year, his average annual earnings are ascertained, under subdivision (b), by multiplying by three hundred the average daily wage of an employee of the same class working substantially the whole of the preceding year. If neither of these methods can reasonably and fairly be applied, the annual earnings of the employee are ascertained under subdivision (c) and are "such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury."

Subdivisions (a) and (b) are applicable only where the employment is of a continuous nature; for it is only in such cases that the multiplication of the average daily wage by three hundred would approximate the average annual earnings. Where the employment is intermittent or discontinuous in its nature, multiplying the average daily wage paid during employment by three hundred would give as annual earnings a sum far in excess of the actual earning power of the employee, and consequently that method of determining average annual earnings cannot reasonably be applied and the method prescribed by section (c) must be followed. This is the holding of the Circuit Court of Appeals of the Ninth Circuit in the recent cases of Marshall v. Andrew F. Mahony Co., 56 F.(2d) 74; Pillsbury v. Pacific Steamship Co., 56 F.(2d) 79, and Pillsbury v. The Charles Nelson Co., 56 F.(2d) 80. The question is fully considered in the able and exhaustive opinion of Judge Neterer in Mahony Co. v. Marshall (D. C.) 46 F.(2d) 539, which discusses the reason of the law and the controlling authorities, and to which nothing need be added.

It is not clear whether the deputy commissioner in the case at bar made his calculation under sections (a) or (b). In either case, he was in error. The record shows that the employment of Ellis was intermittent and discontinuous. During the twelve months' period prior to August 1, 1931, he earned in his employment with the company $527.30. From August 1st to August 25th, the day of his injury, he earned $51.45. His common-law wife testified that when not working for the company "he used to pick up day's work now and again"; but there is no evidence that his earnings outside of what was paid him by the company amounted to any substantial sum. The method adopted by the deputy commissioner would fix his annual earnings at $1,104, or more than twice the amount of his annual earnings as shown by the evidence. It is clear that the amount of his average annual earnings should have been ascertained under section (c); but this does not mean, as the company contends, that the deputy commissioner must fix same at the amount paid him by the company during the preceding year. The sum fixed must be such as will reasonably represent the earning capacity of Ellis, having regard not only to his previous earnings but also to those of "employees of the same or most similar class,

working in the same or most similar employment in the same or neighboring locality."

It follows that, in so far as the court below held that there was jurisdiction under the act to award compensation and that the injury was compensable, the decision is affirmed. In so far as it approved the basis upon which compensation was awarded, it must be reversed. The cause will be remanded, with directions that the enforcement of the award be enjoined and the deputy commissioner directed to make another award in accordance with the principles here stated. In making such award he will fix the compensation of counsel, having regard to the services rendered by them, not only before him, but also in the court below and in this court.

Affirmed in part; reversed in part; and remanded, with directions.