141 P.2d 333

WEBB v. NEW MEXICO PUB. CO. et al.

No. 4710.

Supreme Court of New Mexico.

Sept. 16, 1943.

Wilson & Watson and John C. Watson, all of Santa Fe, for appellants.

Carl H. Gilbert, of Santa Fe, for appellee.

BRICE, Justice.

Appellee, an employee of the appellant New Mexico Publishing Company (hereafter referred to as appellant), sued that company and its surety, appellant Casualty Company (hereafter referred to as Surety), under the Workmen's Compensation Act, Comp.St.1929, § 156-101 et seq., for an injury alleged to have been accidental, and to have arisen out of, and in the course of, his employment as a printer-operator.

The substance of the facts found by the court, which are material to a decision, is as follows:

The appellee was a printer-operator in the employ of appellant New Mexico Publishing Company, and appellant Maryland Casualty Company was its insurer.

In the course of appellee's employment it was necessary that he cleanse his hands frequently, for which purpose the employer furnished soap manufactured for that purpose. During his employment, for six or seven years prior to August 28, 1940, that furnished was a "lava soap." This was the type and kind of soap generally, commonly and usually furnished by printing establishments for the purpose stated. After August 28, 1940, the employer furnished a soap known as "Lan-O-Kleen" which had a base of lanolin and corn meal; and appellee thereafter frequently and continually used it in washing his hands. The appellee was highly allergic to the Lan-O-Kleen soap and as a result of his use thereof, large painful eruptions broke out on the backs of his hands, which developed to such an extent that on or about the 22nd day of February, 1941, he became completely disabled. The use of Lan-O-Kleen would not have caused the injury to appellee except for his allergy thereto. It could not have been reasonably expected or foreseen that the use of Lan-O-Kleen soap would injuriously affect anyone. The resulting injuries constituted an unlooked for mishap which was neither expected nor designed and were accidentally caused.

The foregoing findings are challenged in two particulars by the appellants, upon which they have assigned error.

█ It is asserted that the trial court erred in finding that lava soap was the type and kind of soap generally, commonly and usually furnished by printing establishments for the purpose of cleansing the hands of printer-operators. All of the evidence on this question is as follows:

Appellee testified: "I have followed the profession and trade of a printer-operator practically all my life and have been making a living at it since 1922 or 1923, when I left high school. I have worked in a large number of places, sometimes only a

week in one place, and on to another. I would say I have worked at, at least, thirty-five different plants. In my experience over eighteen or twenty years as a printer-operator the average soap you run into most of the time in the shops I have worked in has been nothing but lava soap."

Q. "That is the standard and ordinary type? A. The one you run across in very much the majority of the plants. I have used lava soap for twenty years and did not feel it was necessary to have it tested."

Dr. Travers testified that corn meal which was one of the ingredients of Lan-O-Kleen soap was the abrasive or that which is essential in a mechanic's soap to remove the grime worked into his hands from the metal with which he works; that corn meal and lanolin, referred to as portions of the contents of this soap, are things that certain people are violently allergic to; that lanolin and corn meal are not usually and ordinarily component parts of soap.

Webster defines "commonly" as "In a manner or degree that is common; usually; generally; ordinarily; frequently; for the most part; familiarly." And "common" is defined "Belonging or pertaining to many or to the majority; generally or prevalent. * * * of frequent or ordinary occurrence or appearance; familiar by reason of frequency. Pertaining to, affecting or applicable to many or the greatest number of persons, cases or occasions; prevalent, usual; extensive though not universal." Usual is defined as "Such as is in common use; such as occurs in ordinary practice or in the ordinary course of events, customarily, ordinarily, habitual, common."

The evidence substantially supports the finding, in the sense that the use of the soap was extensive, though not universal; and that it was used by the greater number of printing establishments. The trial court did not err in so finding.

The trial court's Finding No. 8 is as follows: "That it could not have been reasonably expected or foreseen that the use of said soap so furnished by said defendant employer would injuriously affect anyone and that said injuries so suffered by the plaintiff from the use thereof constituted an unlooked for mishap which was neither expected nor designed, and were accidentally caused."

Appellant states that the words "* * and were accidentally caused" is a conclusion of law.

Where the conclusion that one has suffered an accident is based upon undisputed facts found by the court and incorporated in his decision, the conclusion is one of law, notwithstanding that whether or not an injury is an accident, may be, under some circumstances, a mixed question of law and fact. Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342; Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 40 P.2d 43. We agree with appellant that such finding is a conclusion of law.

With the exceptions ruled upon, the facts found by the trial court are not contested.

■ The facts on the question of whether there was an accident are these: It was necessary for appellee, in the course of his employment, to frequently wash his hands, for which purpose his employer furnished soap. The soap so furnished was one to which he was unknowingly allergic, and its use caused a breaking out of large, painful eruptions on his hands, so that within approximately six months appellee had become completely disabled from performing any work. The injury from the use of the soap could. not have been reasonably expected or foreseen, and his injury constituted an unlooked for mishap, which was neither expected nor designed.

We stated in Stevenson v. Lee Moor Contracting Co., supra [45 N.M. 354, 115 P.2d 350], regarding the phrase "injury by accident", the following: "We are satisfied with the conclusions of these courts, and hold that 'injury by accident' means nothing more than an accidental injury, or an accident, as the word is ordinarily used. It denotes 'an unlooked for mishap, or an untoward event which is not expected or designed.' Fenton v. Thorley, supra."

We had reference to the definition in Lord MacNaughton's opinion in Fenton v. Thorley, [1903] A. C. 443, by the House of Lords, in which he stated: "I come, therefore, to the conclusion that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed."

This definition of the word "accident" as used in the English Workmen's Compensation Act has been followed by the courts of England since the decision in that case, and by us in the Stevenson case. It is. defined by Webster as follows: "A befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance, contingency; often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; casualty; mishap."

Lord MacNaughton's definition is substantially the same as that of Webster, "an undesigned and unforeseen occurrence of an afflictive or unfortunate character".

It is obvious that the finding of the trial court brings the injury of the appellee within the definition of "accident" as approved in the Stevenson case, and that it is a finding of ultimate fact not contested here. It is. asserted by appellee that this being true, it necessarily follows that appellee's. injury was accidental; and, as it arose out of and in the course of his employment, it was a compensable injury.

But appellants forcefully assert that while the injury may, in the sense that it was not expected or designed, have some of the constituents of a compensable accidental injury, yet there are lacking in the findings other facts necessary to support the judgment, among which they assert are the. following:

(1) Appellee's injury was not related to any specific time or event.

(2) Appellee was not subjected to any unusual or extraordinary condition or hazard not usual to his employment, and to which other workmen on the job, or the community generally, were not subjected.

We need not, and do not, decide the question advanced by appellee. We agree with appellants that the decision should rest upon the broader ones which they present, and by it settle for this jurisdiction questions of law regarding which the courts of the country hold diverse views that cannot be reconciled; some because of a difference in the statutes involved, others because of a conflict of judicial thought and reasoning.

It is said that appellee did not relate his injury to any specific time or event, a necessary fact to be found, it is asserted, to support his judgment.

■ The New Mexico statutes not only do not define the word accident, but do not undertake to limit its meaning to "sudden" injuries as do those of a number of the states, nor is its meaning limited by any time test. Our statute is substantially the same as that of North Carolina regarding which the supreme court court of that state said in McNeely v. Carolina Asbestos Co., 206 N.C. 568, 174 S.E. 509, 512: "An examination of the Workmen's Compensation Act of North Carolina discloses many uses of the expression 'injured employee' without the qualifying words 'accident' or 'by accident.' So that, unless we attempt to whittle down or enlarge words or undertake to put big threads through the eyes of little needles, it would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression 'injury by accident' in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman."

■ Accidental injuries are usually sudden happenings; and the time, event and circumstances can be definitely determined, but there are exceptional cases in which injuries are unquestionably accidental, although the precise time of their beginning is uncertain, such as those caused by breathing dust or gases, frost bite, slow poisoning, a series of slight injuries culminating in a serious one, etc. In determining whether there has in fact been an accidental injury, time ordinarily may be considered and may be decisive against the claim. But if from the evidence, though the time is not definitely fixed, it can be consistently said that there has been an accidental injury according to the common usage of that phrase it is sufficient. After all it is a question of accident or no accident, and the precise second, minute, hour or day that it occurred is but evidence to be considered with the other facts and circumstances of the case in deciding whether the injury was in fact accidental. True, there must be a time when it can be said with certainty that a compensable accidental injury has been inflicted; but the cause, and

the coming into existence of the evidence characterizing it as a compensable one, need not be simultaneous events. An injury may be gradual and progressive, and not immediately discoverable; yet certainly and definitely progress to discovery and then to a compensable injury. Such was the injury to appellee. The time did arrive when the appellee's injury totally disabled him so he could not work, and at that time he became entitled to compensation for total disability.

The question was raised in the Stevenson case, regarding which we stated: "It is asserted that appellant's injury was not accidental, in that it could not be traced to a definite time, place, and cause. The injury to appellant occurred upon a day certain, and was the proximate result of breathing poisonous fumes and gases in excessive quantities for seven specific hours on that particular day, while working in the course of his employment. It is not necessary that the injury should result momentarily, to be accidental. It may be the result of hours, even a day, or longer, of breathing or inhaling gases, depending upon the facts of the case."

The findings do not advise us as to when the eruptions began to appear upon appellee's hands, but we are informed that after the use of the soap for six months he had become totally disabled to perform any labor. In the beginning it may be assumed that the effect was not discoverable, but that it had some physiological cumulative effect may be reasonably inferred from the fact that a continuous use caused the injury

complained of. There are a number of cases of this kind in the books.

The statute of North Carolina provides that, "'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident." Code 1939, § 8081(i).

This is substantially our statute. In Mc-Neely v. Carolina Asbestos Co., supra, the workman was employed as a spinner; the atmosphere of the room in which he worked was impregnated with fine asbestos dust which was permitted to accumulate, by reason of which the inhalation of such dust by the workman impaired and destroyed his health, resulting in pulmonary asbestosis. The question as stated by Justice Borgden was: "Is pulmonary asbestosis produced by the inhalation of asbestos dust by an employee during a period of five or six months an 'injury by accident arising out of and in the course of the employment,' within the purview of the North Carolina Workmen's Compensation Law?" [174 S. E. 510.]

The court said:

"Consequently, it is obvious that the word [accident] must not be used in its restricted and technical sense, but in a wider and practical sense necessary to give workable effect to the proper and just administration of the Compensation Law. Variable definitions have been given by the courts to the words 'injury by accident,'

'accidental injury,' etc., and the applications of such definitions to given cases or states of fact have resulted in a divergence of concept and interpretation which cannot be harmonized or brought into unison. * * *

"The fact that she continued at her place of labor, in the doing of her common and regular task, makes it clear that the phosphorous poisoning happened without her design or expectation, and so her injury was accidental.

" * * * It would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression 'injury by accident' in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman."

It was held that the injury was by accident although it was produced gradually and progressively through a period of five months. This, in substance, is the holding of a number of courts where the injury was progressive and gradual. Selvage v. Charles Burrell & Sons, Ltd., 1921, 1 K.B. 344; Vogt v. Ford Motor Co., Mo. App., 138 S.W.2d 684 (a very similar case); Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S.W.2d 580; Aldrich v. Dole, 43 Idaho 30, 249 P. 87; Fife Coal Co., Ltd., v. Young, March 29, 1940, L.T.R. at page 508; Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A.L.R. 363; Beaver v. Morrison, Knudsen Co., 55 Idaho 275, 41 P.2d 605; Brown v. St. Joseph Lead Co., 60 Idaho 49, 87 P.2d 1000; Sullivan Min. Co. v. Aschenbach, 9 Cir., 33 F.2d 1; Kaiser v. Industrial Comm., 136 Ohio St. 440, 26 N.E.2d 449; Cannella v. Gulf Refining Co., La.App., 154 So. 406; Wozniak v. Stoner Meat Co., 57 Idaho 439, 65 P.2d 768; Greis v. Rhamy, 184 Okl. 390, 87 P.2d 658; Dobbs v. Bureau of Highways, Idaho, 120 P.2d 263; Grant v. Kynock, [1919] A.C. 765.

The facts in the case of Selvage v. Burrell & Son, supra, were as follows: The employee, a girl, was engaged in finishing copper shell adapters for about five months, and during that time her hands were frequently scratched in the course of her work. The scratches were not severe but were frequently followed by minor infections. Finally arthritis, which incapacitated her, developed therefrom. Lord Sterndale said:

"The question we have to decide is whether that condition is one resulting from accident arising out of and in the course of the employment. * * * Is the condition less the result of an accident, because, in addition to that accident, there were a number of other previous accidents which all contributed to the septic condition of the patient which eventually resulted? The question is one of difficulty, but I have come to the conclusion that that circumstance does not prevent the condition from arising from accident.

* * * * * *

"I cannot see that the fact that the condition results from several accidents prevents

it.resulting from accident within the meaning of the statute. The statute does not lay down that there must be only one accident, and if the condition is occasioned by what were in truth and in fact a number of accidents arising out of and sustained in the course of the employment, I do not think it matters that there were more than one, or that they extended over a considerable period."

Lord Justice Warrington said: "Now, if the incapacity had resulted from poison entering the system through a single cut received on a particular day, and at a particular place, there would, I think, be no doubt that the applicant would have been entitled to compensation; and if that be so, I really can see no reason why, if the incapacity results from a series of cuts and the subsequent admission of poison which has a cumulative effect, so that the incapacity, instead of happening suddenly, gradually results, that fact should make any difference."

The facts in Vogt v. Ford Motor Co., supra, are as follows: The employer was engaged in the manufacture and assembly of automobiles and the workman was an assembler of parts. He was stationed near a door in which was installed a suction fan for ventilating purposes. This fan was directed into a paint spraying room and the air was forced back to where the employee worked, contaminating it with dust or mist from the paint spraying room. He worked at this place from January 1 to May 21. During the time he gradually became ill.

On May 21st he consulted a physician who diagnosed his case as bronchial asthma. He was off work for about a month and thereafter worked at irregular intervals until the month of August, when he quit. The evidence showed that he was allergic to this paint dust, or mist. In holding the injury an industrial accident, the court said [138 S.W.2d 687]:

"The claim being one for accidental injuries, was there any substantial evidence that an accident occurred to the employee? If there was, of course the award must be upheld because we have no authority to weigh the evidence. That claimant is suffering from an allergic bronchial asthma is conceded by all of the medical testimony.

" * * * Although the statutory definition of an accident terms it 'an event', we do not find that any court has ever construed the statute to mean a single occurrence; in other words, an accident may consist of an event, a single occurrence, or it may consist of an event, a series of occurrences resulting in an injury; and likewise it would be a narrow construction of the statute to say that 'sudden' means instantaneous. The course of occurrences in this case, that is the inhalation of the dust and fumes driven by a fan to the place where Vogt was at work, day after day, culminated on May 21, 1935, in causing him such paroxysms of coughing as to cause him to fall to the floor. The objection symptoms of injury were manifest."

The statute of Missouri defined the word "accident" used in compensation cases, as

follows: " * * * an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." R.S.1929, § 3305, Mo.R.S.A. § 3695.

It will be noticed that the event under this statute must happen "suddenly" for the injury to be compensable.

The question in the case of Downey v. Kansas City Gas Co., supra, was whether a workman who cleaned chimneys became afflicted with conjunctivitis caused from wiping sweat from his face, which at the time was covered with soot, sustained a compensable injury. The Missouri Supreme Court said [338 Mo. 803, 92 S.W. 2d 587]: "Did the event happen 'suddenly' within the meaning of the statute? We think it did. It appears to us that the fundamentally accidental nature of the injury is not altered by the fact that the infection, if it may be so called, was gradual throughout a period of four or five weeks, or that, instead of a single accidental injury, there was a series of accidental injuries culminating in the same consequential result." It was held that his injury was compensable under the Workmen's Compensation Act.

The English case of Fife Coal Co., Ltd., v. Young, supra, bears upon the question.

The employee worked in a crouching position in a low tunnel for several weeks. His position caused a continual pressure on the peroneal nerve. This pressure resulted in an affliction known as "dropped foot." The Lord Chancellor said: "The claimant sustained a definite physiological injury in the reasonable performance of his duties and as the result of the work he was at the time of the injury engaged in. The fact that, in the course of his work for a month before the day when he first suffered from dropped foot, he had felt some loss of the power of dorsiflexion of the right foot seems to me in no way to affect his right to compensation." Lord Atkin said: "In the present case it may well be that the impact of the ground on the knee in the crouching position due to the employment produced an injury each time it pressed on the peroneal nerve and so affected the foot muscles associated with that nerve. In such a case there would be a succession of injuries due to accident by the untoward and undesigned pressure on the knee. But, whether that be so or not, there can be no doubt that on July 27 the pressure on the knee for a period of thirty minutes resulted in the injury of 'dropped foot.' Whether that was the result of a series of preceding injuries appears to me to be irrelevant."

Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 639, 44 A.L.R. 363. A girl who worked for a manufacturer of fireworks during three years, or parts of years, gradually, through

the inhalation of dangerous and noxious fumes and gases negligently permitted and allowed by the employer to be present in the place where she worked, contracted a disease known as "phosphorous poisoning." She had no knowledge of the danger and the result was not foreseen or expected by her. The court said: "The injury thus inflicted upon her body was accidental by every test of the word, and its accidental nature is not lost by calling the consequential results a disease. * * * Nor is the accidental nature of this introduction [into her body or her person] lessened *by the length of time* intervening between the reception of the poisonous substance and the first manifestation of the resultant poisoning, as its progress may be slow, moderate, or rapid, according to the form it assumes. The infection is the accidental injury, and whatever follows in causal connection are but consequences, which measure the duration and effect of the injury." (Emphasis ours)

The pertinent facts in Beaver v. Morrison, Knudsen Co., supra, are as follows: The workman had previously suffered from tuberculosis, but prior to his injury it had been arrested. He had worked for the employer four years in various capacities, among which was that of rock crusher and hot plant operator. He worked at this three or four months of each of the years. When the plant was operating it produced clouds of silica dust in which he was required to work. Breathing dust brought on a cough and caused a slight hemorrhage, after which his work was changed. He continued to work in other capacities until July 1931, when he suffered a hemorrhage and the following October it was discovered that he had acute tuberculosis. The court concluded that breathing the silica caused dormant tuberculosis to become acute. It was held that he was accidentally injured and entitled to compensation, notwithstanding the indefiniteness of the time of the injury.

In the case of Brown v. St. Joseph Lead Co., supra, the facts disclosed employer's negligence in failing to furnish "wet drills", with the result that silica dust "hung in clouds in the place of employment". From breathing this dust over a period of years, the employee became diseased and disabled, and was awarded compensation for such disability as having resulted from an industrial accident. The court made the following observation regarding the time of injury, to-wit: "As to there being an accidental injury within the meaning of the statute this court has repeatedly held, and the facts and circumstances of this particular case and the reasoning applicable thereto clearly shows the reasonableness and correctness of the holding, that the accident need not occur at one instant, but that there may be repetitious causes all relatively slight which culminate and result in as serious and fatal an injury as though the disabling or lethal blow or incident occurred at one time." [60 Idaho. 49, 87 P.2d 1004.]

Sullivan Mining Co. v. Aschenbach, 9 Cir., 33 F.2d 1. A painter's total disability resulted from a week's work during which

he inhaled poisonous gases thrown off by carbon disulphide used as a paint thinner. It was held to be an accident.

The case of Kaiser v. Industrial Comm., supra, is somewhat in point because of the workman's susceptibility to frostbite. For a number of years he had worked in the cold at a filling station, resulting in his feet being frost bitten. The court said [136 Ohio St. 440, 26 N.E.2d 451]: "In weighing the hazard to the employee in comparison with others similarly situated to determine whether injury by freezing is an accidental happening warranting the allowance of compensation, his peculiar amenability to frostbite either from an idiosyncracy or physical weakness of his own or from the insufficiency of clothing or other protection or from other circumstances under which he was compelled to work, are subjects of inquiry. In the instant case the plaintiff, being peculiarly susceptible to frostbite on account of the sensitiveness of his feet due to their previous freezing, was forced out into the cold continuously for a long period of time in servicing cars that came to the filling station for that purpose. The freezing was a fortuitous event peculiar to the situation in which the plaintiff found himself by reason of his employment. Plaintiff's hazard was therefore different from that of people generally who happened to be out of doors in the locality. Under the circumstances the trial court was warranted in finding that the injury by freezing was sustained in the course of and arose out of plaintiff's employment." His injury was held to be the result of an industrial accident.

In the case of Wozniak v. Stoner Meat Co., supra, the employee's work was installing refrigerator plants. He used litharge as a pipe cement which was applied to the threads on pipes and on the inside of fittings. The number of days he was so employed is not stated. About three weeks after the work had terminated he became ill of lead poisoning caused from the use of litharge. It was held that his injury was the result of an industrial accident. There is nothing in the case to indicate the time of his injury. It was not known until three weeks after he had quit work.

In Grant v. Kynoch, 1919, A.C. 765, it was held that blood poisoning, caused by infection through an abrasion on the leg, was an accidental injury though it did not appear when or how the workman received the abrasion and it was impossible to say with certainty the time when the infection occurred. Lord Chancellor Birkenhead said: "*What the particular time was is immaterial* so long as it reasonably appears that it was in the course of the employment.*" (Our emphasis).

We conclude that the time of the injury was established with sufficient definiteness.

That point was determined by our original opinion, and is not now urged on rehearing; but the appellant insists that we did not pass upon the second point, to-wit: "Appellee was not subjected to any unusual or

extraordinary condition or hazard not usual to his employment, and to which other workmen on the job, or the community generally were not subjected."

We quote from appellant's brief, as follows:

"1. That, in view of the large body of authority holding that an injury or disability is not compensable if it occurs or eventuates while the workman is "performing his labor under the usual and ordinary conditions of his employment" there is a call in this case for a decision of this question, one way or the other;

"2. That a decision of the question now is particularly appropriate and is indicated in view of its having been so pointedly reserved in Stevenson v. Lee Moor Contracting Co., supra. To fail to decide invites further dispute and litigation;

"3. Even if the Court should determine, or has determined in its own minds, that there may be compensation though the disability arises out of mere ordinary performance of accustomed duties, there remains our contention that the disability, to be compensable, must be traceable *either* to a specific time or event *or* to some unusual working condition or hazard.

"Suggestions 1 and 2 need not be amplified. A word as to 3: If it be a question of alternative tests (*either* a specific time or event *or* an unusual working condition or hazard), then is it not enough that this Court has said 'the time was definite enough?' We feel that it is not.

"We judge from the opinion that the Court was considering whether the time was definite enough as an independent and unrelated question. And we are impressed that the holding is based on the authorities which hold similarly to the present opinion that the 'accident' need be neither sudden nor violent.

"We have conceded that there are plenty of such cases; but we have pointed out that in substantially all of them the workman was in fact subjected to some unusual or extraordinary working condition or hazard."

In Stevenson v. Lee Moor Contracting Co., supra, we stated that there are three classes in which industrial injuries may be divided:

(1) Those injuries which result from some fortuitous happenings, such as the breaking of machinery, explosions, collisions, etc.

(2) Those injuries in which there is no accident separate and distinct from the injury that caused it, such as strain which causes back injury, rupture, blood clots, hemorrhage; ordinarily the unintended result of an intentional act.

(3) Those injuries suffered by workmen to which they do not contribute by any specific act and which happen while they are in the performance of their usual and customary duties under usual, ordinary and expected conditions and circumstances; such as death caused by lightning, exposure to the elements and changing temperatures,

sunstroke, breathing smoke, gas, fumes, dust, etc.

Regarding the second class we stated: "But in cases where there was no accident separate and distinct from the injury that caused it, the courts are not in accord. Such are strains causing back injuries, ruptures, blood clots, hemorrhages, etc; ordinarily the unintended result of an intentional act of the person injured. These injuries are also held compensable by all courts so far as we are advised, when received in the course of the workman's employment, since Fenton v. Thorley."

The inconsistency is obvious. The last sentence should be discarded. While courts generally hold such injuries compensable, there are decisions to the contrary. Pierce et al. v. Phelps Dodge Co., 42 Ariz. 436, 26 P.2d 1017.

Among the findings of the trial court is the following: "That the nature of the work performed by the plaintiff in his said employment was such that his hands frequently became soiled and greasy and that it was necessary that they be frequently cleansed in order to prevent the soiling of materials and equipment which he was required to handle in his employment."

 The washing of appellee's hands was a necessary part of the labor for which he was employed. His injury, therefore, arose out of and was suffered in the course of his employment, and if accidental, it was compensable. It comes under our second classification; an injury that was the unintended result of an intentional act; re-

ceived while "performing his labor under the usual and ordinary conditions of his employment."

Appellant doubts whether there could be an accidental injury under such circumstances, and contends that but few if any supporting authorities can be found.

There are cases which rest upon the broad holding that an injury is not compensable as an industrial accident if it occurs while the workman "is performing his labor under the usual and ordinary conditions of his employment," notwithstanding he may have suffered "an accidental injury" within the meaning of that phrase as popularly and ordinarily used.

By far the larger percent of accidents occur while workmen are performing their labor under the usual and ordinary conditions of their employment. It so happened that the decision in the Stevenson case rested partially upon the fact that the employee's working conditions were unusual; but not entirely. We stated: "If the appellant had been struck in the chest with a stone, the effect of which had been to lower his resistance so that pneumonia resulted, no one would question but that it was an accident. He was struck in the respiratory organs by the finer substance of fumes and gases, with the same effect. We see no material difference in the two causes. Such was the reasoning of Lord Birkenhead in Grant v. Kynoch, [1919] House of Lords, A.C. 765."

The cases which hold that there must be an accident, sudden and catastrophic in its

nature, apart from the injury, regarding which the time, place and event can be definitely ascertained, also hold that such condition is supplied if there is something in the nature of the work itself, that increased the hazard beyond that "faced by other people in the same locality," McCarthy v. American Car & Foundry Co., Mo.App., 145 S.W.2d 486, 489; or not common to his fellow employees, Barker et al. v. Naragansett, etc., Ass'n, 65 R.I. 489, 16 A.2d 495, 17 A.2d 23; but that if the work was done "with no unusual occurrence constituting a mishap or fortuitous happening and the laborer was working under the usual and ordinary conditions of his employment," then there would be no compensable accident.

But on the other hand those courts which take a more liberal attitude toward the workman, whose decisions this court has followed, hold that the fact that the workman was or was not performing his labor in the usual and ordinary way is immaterial, if in fact there was an accidental injury suffered by him that arose out of, and happened in, the course of his employment. An injury resulting from unusual working conditions is usually held to be accidental, but there is nothing in the New Mexico compensation statutes that makes such condition (though there may not be an accident distinct from the injury) a necessary element of an accidental injury. The Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 902 provides that "the term 'injury' means accidental injury or death arising out of

and in the course of employment, * * *." We held in the Stevenson case that such was the meaning of our statute. In construing this section the Circuit Court of Appeals of the Fourth Circuit in Baltimore & O. R. Co. v. Clark, 59 F.2d 595, 597 (opinion by Judge Parker) said:

"And we think it equally clear that heat prostration resulting from the conditions of employment, as was found by the deputy commissioner in this case, is compensable under the statute without reference to whether there was any unusual or extraordinary condition in the employment not naturally and ordinarily incident thereto. The statute provides that 'the term "injury" means accidental injury or death arising out of and in the course of employment.' 33 U.S.C.A. § 902. It says nothing about unusual or extraordinary conditions; and there is no reasonable basis for reading such words into the statute. A workman who sustains heat prostration as the result of the working conditions under which he labors, has sustained an injury 'arising out of and in the course of his employment'; and the fact that other workmen may not have been affected or that he may have been rendered more readily susceptible to injury than they were by reason of his physical condition cannot affect the matter. * * *

"* * * The rule supported by the weight of authority, however, is that heat prostration which results from the employee's engaging in the employment, whether due to unusual or extraordinary

condition or not, is to be deemed an accidental injury within the meaning of the statutes. * * *

"Such an injury is accidental in that it is unforeseen and unexpected. If it results from the conditions under which the work is carried on, there is no reason why it should not be held compensable. * * * Nor is it material that such injury would not have resulted but for the physical condition of the employee. His condition is to be deemed not the 'cause' of the injury but merely a 'condition' which enabled the 'cause' to become operative."

Injuries often occur to workmen who have some physical condition or latent illness because of which the ordinary labor of the employment produces injuries that were not expected or designed, which would not have injuriously affected a well person. In the principal case of Fenton v. Thorley, supra, it was held that a workman, while performing his ordinary and expected labor, was ruptured by exerting force to turn a wheel that was stuck, had suffered a compensable accident. The doctrine of that case was followed and extended by the House of Lords in Clover-Clayton Co. v. Hughes, 1910, A.C. 242. The injured workman involved in that case was suffering from an aneurism in such an advanced stage that while tightening a nut with a spanner (wrench) usual in his work, he ruptured the aneurism, from which he died. He was held to have suffered a compensable accident. These cases were cited with approval by us in the Stevenson case.

The Washington Supreme Court in a recent case (Guiles v. Department of Labor, 13 Wash.2d 605, 126 P.2d 195, 197) held, under its compensation statute which is substantially the same as ours, that "an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of the workman's health." The court stated: "This is the rule that prevails in a great many of the jurisdictions having compensation acts similar to our own." In support of this conclusion the Washington court cited the two English cases to which we have referred, our case of Stevenson v. Lee Moor Contracting Co., supra, and other cases. The same court in McCormick Lbr. Co. v. Department of Labor, 7 Wash.2d 40, 108 P.2d 807, 815, in emphasizing its conclusion said: "It is true that in practically all of the cases hereinbefore cited there was some strain or effort beyond that ordinarily employed by the particular workman. However, the rule which this court has repeatedly and emphatically stated in those same decisions was not limited to those conditions. What this court has positively declared as its accepted rule, under both the original and the present definition of 'injury' is this: An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of the workman's health."

See also Smith v. Department of Labor, 179 Wash. 501, 38 P.2d 212; Bergagna v. Department of Labor, 199 Wash. 263, 91 P.2d 551, 552.

The question was decided in Cavanaugh v. Murphy Varnish Co., 130 N.J.L. 107, 31 A.2d 759. The workman was unloading cartons of paint from a truck two days after he was employed. While lifting one he felt a pain in his chest and began to cough. In a few minutes he suffered a lung hemorrhage and was found upon examination to have tuberculosis. The court stated it as an established fact in the case that the employee was suffering from tuberculosis at the time of commencing his employment. The contention was that, to be a compensable accident, the strain suffered must have been the result of an unusual effort, and not one ordinarily required in the performance of his usual work. The court cited Molnar v. American Smelting & Refin. Co., 128 N.J.L. 11, 24 A.2d 392, 393, in which it was held that it was not necessary to show unusual effort or exertion, although it did appear in that case that "the degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart." That such had been the attitude of the Court of Errors and Appeals up to that time, see Ciocca v. National Sugar Refining Co., 124 N.J.L. 329, 12 A.2d 130.

One of the questions in Smith v. Southern Builders, 202 S.C. 88, 24 S.E.2d 109, 115, was whether a workman who suffered a heat prostration, while engaged in his usual and ordinary employment, was accidentally injured. The South Carolina court said: "Although the authorities on this subject are not uniform, we think the following conclusions by Judge Parker of the Court of Appeals of the Fourth Circuit in the case of Baltimore & Ohio Railway Company v. Clark, 59 F.2d 595, 597, after an able and exhaustive review of the cases, are in accord with the weight of authority and are sound in principle: * * *." Here followed the quotation made herein from the Clark case.

The authorities which support the contention of the appellants are numerous. Some almost identical with the facts of this case. Such a case is Kusevich v. H. J. Heinz Co., 149 Pa. Super. 232, 27 A.2d 778, 779, the facts of which are as follows: The workman packed products in boxes and sealed them with glue for shipment. The glue would stick to his hands. This occurred one day and he went to the washroom as was his custom to remove the glue. He used hot water and the same soap that he and a large number of his fellow employees had been using without apparent ill effects for a year. There was no evidence that there was any abrasion. About four hours thereafter a rash appeared and at the end of three days the skin affliction had extended to his elbows and was so painful that he quit work. The facts show that he was suffering from dermatitis caused from the soap, to the contents of which he was allergic. The court said: "The facts before us present a case of an employe on

the date of the alleged accident doing the same character of work and in the same manner that he was accustomed to with no unusual occurrence constituting a mishap or fortuitous happening. * * * Concededly he had dermatitis and there was evidence that it was caused by the soap. Whether it was the result of the use of the soap on that particular date or due to a daily use for a long period the medical authorities said frankly they could not state. But mere proof of an injury, apparently attributable to claimant's skin being allergic to this soap, does not justify a conclusion that the injury resulted from an accident." It was held that there was no accident; "there must, however, in all cases be an accident. Here there was none."

The decisions of the Pennsylvania courts are exactly contrary to those which we have cited with approval in support of the judgment of the district court in this case.

The case of Powell v. Hills Garage, 150 Pa.Super. 17, 27 A.2d 773, is typical. It was held that a garage mechanic who died of coronary occlusion while performing his usual and ordinary labor did not die from an accidental injury; that the strain that caused his death was due to the cramped position in which he was lying while working with a socket wrench, and that position was not unusual in the type of work he was doing.

To the same effect is Royko v. Logan Coal Co., 146 Pa.Super. 449, 22 A.2d 434, 438, in which the court said: "In order to sustain an award, the record must disclose competent and substantial evidence, either direct or circumstantial, of the happening to an employee of something undesigned, unexpected or fortuitous, outside of the ordinary course of events, and also of a fatal or disabling injury resulting therefrom."

Also see the following cases cited by appellants, which support their contentions: Jeffreyes v. Charles H. Sager Co., 233 N.Y. 535, 135 N.E. 907; Reader v. Milwaukee Lbr. Co., 47 Idaho 380, 275 P. 1114; Chalfant v. Arens, 167 Or. 649, 120 P.2d 219; Matczak v. Goodyear T. & R. Co., 139 Ohio St. 181, 38 N.E.2d 1021.

It would serve no useful purpose to review further any considerable number of the cases on this question. Broadly speaking, the authorities divide upon the meaning of the phrase "injury by accident"; the conclusion depending upon whether a strict or liberal construction should be followed. Many of the cases are controlled by statutory definitions. We have consistently construed the act liberally in favor of the workman.

It is admitted that appellee's injury arose out of, and was sustained in the course of, his employment. His duties required him to wash his hands to prevent soiling the products of his labor. Except for his idiosyncrasy, it is true, he would not have suffered an injury, but the same may be said of a workman who, but for a defective physical condition, would have withstood the strain of his ordinary labors, yet

suffered a compensable injury because of an exertion too great for one in his condition of health. Such are workmen who have heart afflictions, tuberculosis, etc., whose deaths result from strains or labor too heavy for their strength. See the following cases: Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N.W. 35, 94 A.L.R. 573; Calhoun v. Rayville Ice & Fuel Co., La.App., 161 So. 660; Southern Shipping Co. v. Lawson, D.C., 5 F.Supp. 321; Eastman Co. v. Industrial Accident Comm., 186 Cal. 587, 200 P. 17;. Baltimore & O. Ry. Co. v. Clark, supra; Scarborough v. Beardmore, 52 Idaho 180, 12 P.2d 771; Belcher v. Des Moines Elec. L. Co., 208 Iowa 262, 225 N.W. 404; Lee v. Lone Star Cement Co., 142 Kan. 349, 46 P.2d 864; Patrick & Tillman Drilling Co. v. Gentry, 156 Okl. 142, 9 P.2d 921.

As stated in Baltimore & O. R. Co. v. Clark, supra, the statute "says nothing about unusual or extraordinary conditions [of employment] * * * that he [the workman] may have been rendered more readily susceptible to injury than they [other workmen] were by reason of his physical condition cannot affect the matter." The soap was a poison to appellee and his injury was compensable.

The judgment of the district court is affirmed. The appellee is awarded $350 attorney's fees for compensating his counsel for the preparation and trial of his case in this court.

It is so ordered.

BRICE, Justice.

SADLER, C. J., and MABRY, J., concur.

THREET, J., did not participate.

BICKLEY, Justice (dissenting).

I am bound by the law as laid down in Stevenson v. Lee Moor Contracting Company, although not concurring therein, but that decision is not controlling here. In that case the majority rested the conclusion that there was an accident on the fact "that appellant was subjected to unusual and extraordinary conditions and hazards not usual to his employment, and to which no other of the workmen on the job was subjected." [45 N.M. 354, 115 P.2d 342, 356.] The findings of the trial court in the case at bar do not bring the plaintiff within that situation.

Mere proof of an injury apparently attributable to plaintiff's skin being allergic to the use of the soap, does not justify a conclusion that the injury resulted from accident arising out of and in the course of his employment. I dissent.