# Hill *v.* Thomas S. Gassner Company et al., Appellants.

Argued October 2, 1936.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*George H. Detweiler,* for appellant.

*Thomas M. J. Regan,* with him *Herman Toll,* for appellee.

OPINION BY BALDRIGE, J., December 11, 1936:

This appeal is from an award granted to a widow in a workmen's compensation case.

The deceased, a regular employee of the defendant company, was, on October 23, 1930, engaged in erecting fire doors in the Art Museum located on the Parkway in Philadelphia. At about 11:15 a. m., being unable to find some required bolts on the premises, he left, in an automobile which he owned and maintained, to get them from either the hardware store or his employer's shop. Officer Boeger testified that he saw the deceased about 11:30 "struggling—he had trouble with a car at 25th & Fairmount Avenue. The car was facing down 25th Street and he was in back of it trying to hold it back, laying up against it. I walked down to the corner to see what was wrong and he had engine trouble and there was a few of the children from the school helping him to push the car ...... By the Referee: Q. He was running the car at the time? A. No, sir, he still had trouble pushing it around, this was about eleven-thirty ...... Q. And then you saw him get the car up the hill? A. Part way up and the next thing I seen him out on Fairmount Avenue coming down. Q. How long later was the next time? A. Maybe ten or fifteen minutes later." The deceased evidently succeeded, with great effort, in getting the car to the top of the grade, and then this officer saw him "leaning against it to hold the car back." Norman Harper testified that at 12:20 he noticed the car parked halfway against the curb, with the deceased looking in the hood and bending over the engine; that he straightened up a little and then fell over backwards, and died immediately.

It was not disputed that the deceased died of a heart condition. At the first hearing, Dr. Burke, the coroner's physician, testified that in his opinion the cause of death was chronic pericarditis. The referee

found that he died from natural causes and disallowed compensation. The board, on appeal, concluded that the deceased was furthering the interest of his employer at the time of his death; but returned the record for the purpose of calling an impartial medical expert to determine whether deceased's death was due to an accident or to natural causes.

Dr. William D. Stroud was called at this hearing and testified that in his opinion the deceased died of an occlusion of a coronary vessel, or that certain changes went on in the heart muscles which allowed clots to form in the left ventricle and a piece of this clot was thrown out of the left ventricle and lodged in a vessel in the brain, causing the sudden death. He stated further: "I don't feel that we can say positively whether [death] was due to the physical effort or whether it might have occurred without the physical effort. It is perfectly possible that the physical effort might have been a contributing factor and that is, I think, as far as I can go."

The board remitted the record once more to the referee for the purpose of recalling the coroner's physician to elicit more specific testimony as to his findings, so that the parties might be able to bring in medical experts to testify on the basis of these post mortem findings and other evidence. Dr. Burke, at this hearing, gave further testimony of the result of his examination of the deceased.

Dr. Stambul, the claimant's physician, testified that the inflammation of the membrane of the sac covering the heart affected the heart muscle itself and the exertion strained the impaired heart of the deceased and caused his death, that the time elapsing between the exertion and death did not change his opinion, and that a person with such a diseased heart might have a coronary occlusion or dilated left ventricle and live for a number of hours after the exertion.

The referee, at this hearing, found as a fact that the deceased, in pushing the automobile, was subject to an unusual exertion which over-taxed or brought on an undue strain upon a defective heart and aggravated the previous condition of pericarditis and caused his death; and awarded compensation, which was sustained by the board and the court below.

Defendant appealed, alleging that there was no accident, that the deceased died of natural causes, and that there was no competent evidence to establish that the deceased at the time of his death was engaged in the course of his employment.

The appellants stress the point that Dr. Stambul's testimony was so conflicting that it should not have been given weight by the compensation authorities. It is argued that in cross-examination he contradicted his testimony respecting the cause of deceased's death in adhering to his answer, to which his attention was called, in response to a question asked at the original hearing by appellants' attorney, which was as follows: "And isn't it fair to assume that if he had a strain or any condition of over-exertion so severe as to cause a cessation of the heart action at the time it did cease, that the over-exercise would have caused immediate prostration of the man following that exertion?" The doctor stated that he did not thoroughly understand the question, and after the referee reframed it, he replied in the affirmative. It is evident that he was expressing the opinion that if the heart ceased acting, it would result in immediate death. We think there was no conflict in the doctor's testimony.

Death in the ordinary course of employment, resulting from strain upon the heart caused by unusual exertion, is an accident within the meaning of the workmen's compensation statutes.

In *Murphy v. P. & R. C. & I. Co.*, 98 Pa. Superior Ct. 108, claimant was shoveling coal over a board five

feet high, a task he had never performed before. He became dizzy and a diseased artery in his brain broke, causing paralysis. The injury was held compensable, even though the deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person.

In *Samoskie v. P. & R. C. & I. Co.*, 280 Pa. 203, 124 A. 471, plaintiff's claim for compensation was based on the theory that death was due to a ruptured blood vessel caused by over-exertion in moving a loaded mine car. Deceased, who suffered from a previous arteriosclerosis condition, died about fifteen minutes after pushing the car. At the original hearing, the physicians were unable to say positively that exertion caused his death, in view of the lapse of time between the moving of the car and his distress. Additional physicians called at a rehearing testified that the interval between the moving of the car and the rupture was not unusual and that death did result from strain. The award was sustained.

In *Clark v. Lehigh Valley Coal Co.*, 264 Pa. 529, 107 A. 858, the court held that the fact that deceased had a chronic ailment which rendered him more susceptible to injury did not defeat the right to compensation. See, also, *Lackner v. Pierre, Inc. et al.*, 120 Pa. Superior Ct. 50, 181 A. 845.

In *Tracey v. P. & R. C. & I. Co.*, 270 Pa. 65, 112 A. 740, the deceased while lifting a "buggy" from one place to another strained his heart which caused a cardiac collapse. In *Watkins v. Pittsburgh Coal Co.*, 278 Pa. 463, 123 A. 461, the deceased died from a strain of the heart caused by climbing eighty feet up a stairway. In *Hughes v. Prizer-Painter Stove Works*, 109 Pa. Superior Ct. 53, 165 A. 527, the evidence showed that the work was "strenuous" and "tiresome" and of a character which deceased was not accustomed to doing. An award was sustained in those cases.

On the other hand, death occurring while in the dis-

charge of usual duties, in a normal manner, without exceptional effort, is insufficient to establish a "mishap" or "fortuitous happening": *Gausman v. Pearson Coal Co.,* 284 Pa. 348, 131 A. 247; *Mooney v. Yeagle,* 107 Pa. Superior Ct. 409, 164 A. 82; *Pastva v. Forge Coal Min. Co.,* 119 Pa. Superior Ct. 455, 179 A. 919.

In the case at bar, the medical testimony was conflicting. But this court has held many times that on appeal its duty is not to weigh the evidence but to examine the record to determine whether there was competent evidence to support the conclusion of the referee and the board: *Trimbath v. Penn M. L. Ins. Co.,* 119 Pa. Superior Ct. 371, 181 A. 383.

Our conclusion is that there was sufficient proof of an accidental death, as the evidence established that there was an untoward occurrence aside from the usual course of events.

That brings us to the discussion whether there was sufficient evidence to find that death occurred in the course of deceased's employment. It is very definitely stated that he left his place of employment near the noon hour for the sole purpose of obtaining some bolts. There is no evidence that he ceased work to eat or that he had eaten his lunch.

In *Bridge v. Lomax,* 69 Pa. Superior Ct. 109, a stenographer and clerk, while performing an errand for her employer during lunch hour, was struck by a stone hurled by some boys. An award was sustained, as claimant at the time, although on her lunch hour, was actually engaged in the furtherance of her employer's business.

In *Zapos v. Demas et al.,* 106 Pa. Superior Ct. 183, 161 A. 753, the deceased was employed to wait on tables, buy meat and groceries and run errands for defendant's restaurant. On the day of the accident, he was directed to go to the market and buy meat and take it to defendant's home. After delivering his purchases

he was returning to the restaurant when he was killed by an auto. We held that the service in which deceased was engaged at the time of accidental injury was incidental and so closely related to the general business and affairs of his employer that he was within the course of his employment. See, also, *Adams v. Colonial Colliery Co.,* 104 Pa. Superior Ct. 187, 158 A. 183.

A review of this record convinces us that the proof clearly establishes that the deceased had not abandoned his work, that his death occurred when he was doing something relating to it, and, therefore, he was in the course of his employment.

Judgment affirmed.