263 P.2d 690

HATHAWAY

v.

NEW MEXICO STATE POLICE et al.

No. 5617.

Supreme Court of New Mexico.

Nov. 14, 1953.

On Rehearing Dec. 15, 1953.

Simms, Modrall, Seymour, Simms & Sperling, Albuquerque, for appellants.

Joseph L. Smith, Lorenzo A. Chavez, Albuquerque, for appellee.

Richard H. Robinson, Atty. Gen., Santa Fe, amicus curiae.

SADLER, Chief Justice.

This is an appeal by defendants (appellants), the employer and insurer, from an award to plaintiff (appellee) of the sum of $30 weekly for a period of 550 weeks commencing on January 8, 1952, for and on account of total and permanent disability found to have been suffered by claimant through an accident arising out of and in the course of his employment on the date above mentioned. The trial of the facts was before a jury, instructed by the court as to the law in a manner satisfactory to both parties, in so far as any error assigned by either of them before this Court is concerned. It is from the judgment entered by the court on a verdict favorable to the claimant that the defendants prosecute the present appeal. The following facts were before the jury in reaching its verdict.

The claimant at time of the injury complained of was 44 years of age and had been a member of State Police force since 1935 except for a short tour in the Navy in 1944. Following discharge from the Navy by reason of varicose veins bilateral, a condition unrelated to heart disease, records of periodical examinations at vetterans' hospitals disclosed claimant's weight as ranging between 165 to 170 pounds and his blood pressure as normal up to and including his last examination on August 16, 1951.

Since June 1, 1951, he had been captain in charge of 12 officers of New Mexico State Police in the Albuquerque district where he resided. His usual office hours

were from 7:30 to 8:00 in the morning to 5:00 to 6:00 o'clock at night, though he was on 24-hour call. His duties were mainly supervisory and included executive, administrative, investigative and instructive work. Holding the rank of captain, as he did, he had engaged in the type of work he was doing the night of January 8, 1952 "very infrequently." Leaving his desk at headquarters and going out to lead a party searching for a fugitive was an unusual incident in the normal, everyday performance of his duties and was described by claimant as an "emergency proposition." There was no one else available to go up that night to aid in the search except Patrolman Dennis, so claimant went himself.

The claimant had always been very active, doing more than his share of the work and was considered by the Chief of State Police as one of the best officers on his force up to time of the injury complained of. Until then, except for the varicose veins for which he was receiving a $15 per month disability allowance from the government, and save for an attack a month previously of some sort, which produced a severe pain in the stomach from which he quickly recovered without aid of a doctor, the claimant described himself as "very rugged" at time of the questioned injury suffered the night of January 7, 1952. At about 11:30 that night he undertook to aid a rookie policeman in the search for an unidentified man who had escaped from the patrolman some thirty minutes earlier on U. S. Highway 66 east of Albuquerque in Tijeras Canyon.

The searching party was composed of one city and two state patrol cars, including claimant's. The party began the search about 11:30 p.m. on 'January 7, 1952, and it continued until 2:30 or 3:30 a.m. on the 8th. The claimant himself was driving a State Police car, accompanied by City Policeman Bradstreet. They drove southwest from near the Four Hills Ranch south of Highway 66. Conducting a hurried search of that area, a hilly country cut by arroyos, they covered about one mile and a half in the rocky, sandy terrain, difficult to traverse and did so on foot much of the time.

Shortly before the search was concluded, claimant's car became stuck in a sandy arroyo from which he extricated it by shoveling sand from around the wheels of the car. Some minutes after shoveling his car free from the sand the claimant appeared pale, with beads of perspiration standing out on his face and to a companion seemed abnormal in appearance and demeanor. When the search was concluded, which was about 3:00 a.m. on January 8, 1952 the claimant, as observed by Sergeant Dennis, was in the condition described below, to wit:

"A. (His appearance) was not normal. That was very apparent. He

was quite flushed, and was having difficulty in breathing; he was kind of panting, and I, in a kidding nature, asked him if he had run from the highway up there. He said, no, the car was right out there, he was just out of wind, and never had been able to get his breath back. He was having some difficulty in breathing, and we talked a little longer, and when we parted, I was going home, and as far as I knew, he went home. I told him that I would see him the next morning, and he said yes. He said, 'I will be there' he said, 'I might be a little late.' He said, 'I sure don't feel good.' I said, 'Well, you are just getting old.' He said he was having some pain in his chest, and a little trouble breathing. Now, that was the conversation, in substance, not verbatim, but in substance."

True to his prediction, he was late in arriving at work next morning. Indeed, it was mid-forenoon before he arrived. He appeared listless, did little work that day and left the office from an hour and a half to two hours before quitting time. He went directly home and to bed and remained there until about 1:00 a.m. of the 9th when, following a heart attack, he was taken to St. Joseph's Hospital in an ambulance. He was released from this hospital and returned home on January 12th following. He was at home only two days when he was again hospitalized by being taken to Southwestern Presbyterian Hospital where he remained for about a month.

The claimant visited his office on three or four occasions between January 8, 1952, and May 14, 1952, the trial date. He was not able to drive a car, but conferred with officers when they called him for advice and checked reports on a few cases. He received his regular salary but no compensation. Dr. Walter I. Werner of Albuquerque who attended claimant on January 9, 1952, and specializes in diseases of the chest, which includes the heart and lungs, diagnosed his trouble as that of angina pectoris, a cardiac condition. The attending physicians prescribed a dose of vasolidator which he takes constantly as well as taking oxygen and nitro-glycerine in times of stress. He spends most of his time in bed.

There seemed an agreed view among the medical experts who testified that the unusual strain or excitement, both physical and mental, of January 8, 1952, which claimant had experienced, either precipitated, or was the predisposing, or immediate, cause of the acute attack on the 9th which produced his disability. They likewise testified and the jury found that he was totally and permanently disabled. It was upon a verdict for claimant based on the foregoing facts that the court entered the judgment appealed from.

Counsel for the respective parties have filed exhaustive briefs and have argued the case orally upon submission. Many cases from our own and other jurisdictions have been cited and most of them analyzed. We find it unnecessary, however, to enter upon an extended discussion and exposition of these cases, especially those from other jurisdictions, since we are convinced that this case, on its merits, is to be governed by principles laid down in a few of our own earlier decisions. We have only to apply those principles to resolve the main question presented on this appeal. The cases we have in mind, each of which lends support, in greater or lesser degree, to our conclusions are Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1; Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342; Barton v. Skelly Oil Co., 47 N.M. 127, 138 P.2d 263; Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002, and Aranbula v. Banner Mining Co., 49 N.M. 253, 161 P.2d 867.

In Christensen v. Dysart, supra, an employee of the defendant, Dysart, was killed in a fall from a platform on which he stood while at work as a carpenter re-roofing a house. He had been complaining of heart trouble, and his ailment had been diagnosed by a physician some weeks earlier as coronary thrombosis. It was insisted by defendant that the decedent died of heart disease, rather than from the fall itself which fractured two ribs, one of them puncturing a lung, and the fall also inflicting a bruise on the head. He died a few moments after the fall. We held there was substantial evidence to support the trial court's finding that decedent's death resulted from the fall as an accident arising out of and in the course of his employment. We said this was true even though the fall may have been occasioned, or precipitated, by the preexisting heart ailment and there was some evidence that it was so caused. We quoted with approval from an authority cited in Industrial Commission v. Nelson, 127 Ohio St. 41, 186 N.E. 735, as follows:

"Some cases hold that where an employee is seized with a fit and falls to his death the employer is not liable because the injury did not arise out of the employment; * * * but a majority of the courts, American and English, hold that if the injury was due to the fall the employer is liable even though the fall was caused by a preexisting idiopathic condition." [42 N. M. 107, 76 P.2d 4.]

Again, in Christensen v. Dysart, we quoted approvingly from Hill v. Thomas S. Gassner Co., 124 Pa.Super. 217, 188 A. 382, as follows:

"Death in the ordinary course of employment, resulting from strain upon the heart caused by unusual exertion, is an accident within the meaning of the workmen's compen-

sation statutes. * * * On the other hand, death occurring while in the discharge of usual duties, in a normal manner without exceptional effort, is insufficient to establish a 'mishap' or 'fortuitous happening.' Gausman v. R. T. Pearson Co., 284 Pa. 348, 131 A. 247; Mooney v. Yeagle, 107 Pa. Super. 409, 164 A. 82; Pastva v. Forge Coal Mining Co., 119 Pa.Super. 455, 179 A. 919."

Stevenson v. Lee Moor Contracting Co., supra [45 N.M. 354, 115 P.2d 345] was a case in which former Chief Justice Brice, writing for the Court, explored at great length the proper meaning under our Workmen's Compensation Act of the phrase, "by accident arising out of and in the course of his employment." 1941 Comp. § 57–902, as applied to an injury suffered by a workman. An employee of defendant had been disabled following an attack of pneumonia, preceded immediately by inhalation of an excessive amount of fumes and smoke given off by an old and defective truck furnished by his employer to operate as the driver. There, it was earnestly urged by counsel for defendant that the proximate cause of plaintiff's disability was the pneumonia rather than an "accident arising out of and in the course of his employment". The issue was bitterly contested both below and here.

The trial court found on substantial evidence that the effect of inhaling excessive gases and fumes emitted by the old truck (more than any other on the job) was to precipitate the activity of pneumococci germs present in plaintiff's body, which resulted in pneumonia. Nevertheless, the court made a finding that there was no accident on the one day the plaintiff had engaged in operating the truck and denied a recovery. We reversed and remanded the cause with instructions to enter judgment for the plaintiff.

In the course of the opinion in that case it was said:

"It is asserted that appellant's injury was not accidental, in that it could not be traced to a definite time, place, and cause. The injury to appellant occurred upon a day certain, and was the proximate result of breathing poisonous fumes and gases in excessive quantities for seven specific hours on that particular day, while working in the course of his employment. It is not necessary that the injury should result momentarily, to be accidental. It may be the result of hours, even a day, or longer, of breathing or inhaling gases, depending upon the facts of the case. (Citations omitted.) The time, place and cause were definite and certain."

We concluded our opinion in that case with these observations, to wit:

"It appearing from the findings of the court that appellant was subjected to unusual and extraordinary conditions and hazards not usual to his employment, and to which no other of the workmen on the job was subjected; and that such unusual and extraordinary conditions and hazards were the proximate cause of his attack of pneumonia. We conclude that his injury, including that resulting from pneumonia, was an injury by accident.

"We do not decide whether appellant would have been entitled to compensation if his injury had occurred while performing the usual and ordinary labors incident to his employment, and not under the extraordinary conditions found by the court; that is, whether the injury and not the cause of it must be unintentional and unexpected to constitute an injury by accident. The facts of this case do not require it, and we express no opinion on the question."

See, also, Peter Kiewit Sons Co., etc. v. Industrial Comm., 124 Colo. 217, 236 P.2d 296.

In our opinion in the Stevenson case innumerable authorities are cited where under varying facts, some of which are analogous to those of the present case, the injury complained of was held to be accidental and a recovery sustained. The decision in that case was much relied upon in the later case of Webb v. New Mexico Pub. Co., supra, in reaching the conclusion that the injury complained of was "accidental" and in the case of Aranbula v. Banner Mining Co., supra, in supporting the view that it was not. Both decisions, in their rationale, support the conclusion we here reach that the plaintiff's disability rests on a compensable injury.

The trial court instructed the jury touching the decisive issues in the case as follows:

"2. You are instructed that under the Workmen's Compensation Act of the State of New Mexico, a workman is entitled to compensation for accidental injuries incurred and arising out of and in the course of the workmen's employment. However, under our law, it is not every injury or sickness that is compensable. An employer is not an absolute and unconditional guarantor or insurer of the health and life of his employees, therefore, before you can find a verdict for the claimant Hathaway in this case, it must be established to your satisfaction by a preponderance of the evidence (1) that Mr. Hathaway suffered an accidental injury; (2) that such injury arose out of the employment of Mr. Hathaway; (3) that said accidental injury was suf-

fered by Mr. Hathaway in the course of his employment as a state policeman.

"As stated, you must be satisfied by a preponderance of the evidence that all of these elements are present and have been proved by Mr. Hathaway before you can return a verdict in his favor in this case.

"You are further instructed that before you can find in favor of Mr. Hathaway, the claimant in this case, it must be proved that there is a causal connection between Mr. Hathaway's employment as a state policeman and the heart condition from which Mr. Hathaway is suffering. In other words, if you should find from the evidence that Mr. Hathaway's heart condition is the result of a slowly progressive disease and that there is no causal connection between the disease, the attacks which Mr. Hathaway has suffered as a result of the disease, and the employment of Mr. Hathaway, then you cannot return a verdict for him in this case. You are not allowed to speculate in this case but you must confine yourself to a consideration of the evidence and must determine upon which side that evidence preponderates in arriving at your verdict.

"3. A person suffering from a pre-existing physical condition who is disabled by an injury proximately arising out of his employment is entitled to compensation even though a normal man would not have been so adversely affected by such event.

\* \* \* \* \* \*

"8. In order for you to find for the Claimant herein, you must find by a preponderance of the evidence that his disability, if any, occurred as a result of an untoward event occurring during the performance of his duties as Captain of the State Police Force. You must find some unusual, exceptional or extraordinary exertion or other activity performed by the Claimant while engaged in his duties as such Captain of the State Police Force. The question of a pre-existing condition has otherwise been explained to you by other instructions.

"9. You are instructed that the uncontradicted medical testimony in this case has been to the effect that heart diseases and heart ailments are due to natural causes and are the result of certain natural bodily changes. Therefore, if you find that the present disability of Mr. Hathaway is the result of heart disease which has been progressive and which has been present either known to him or unknown to him for some period of time and if you further find that Mr. Hathaway's present disability has not been pre-

cipitated or aggravated by a particular happening or event then your verdict shall be in favor of the defendants.

"10. As in other civil cases generally, the burden of proof is on the compensation claimant to prove his case in all of its parts by a preponderance of the evidence, and to your satisfaction. By this is meant that the Claimant should prove that the injury which he received while in the employ of the employer, New Mexico State Police, resulted in his disability, either wholly or partially, and temporarily or permanently, and he should satisfy you by a preponderance of the evidence the extent to which he was and is disabled and the duration thereof.

"11. You are instructed that there is a legal presumption that a heart attack is a result of natural causes and not accidental causes and it is incumbent upon an applicant for compensation to prove that his disability resulted from an accident arising out of and in the course of his employment; however, as that term has been defined it is not necessary in order to recover that the claimant negative or exclude every other possibility that the injury may have arisen other than of the employment, where a legitimate inference from the evidence is that he suffered an injury which arose in the course of and out of the employment.

"12. Injury by accident means nothing more than an accidental injury, as the word is ordinarily used. It denotes an unlooked for mishap, or an untoward event which is not expected or designed.

"13. You are instructed that an employee is entitled to compensation for disability caused by an injury suffered by an accident arising out of and in the course of his employment, even though such disabiltiy is in part the result of the aggravation by the injury of a pre-existing ailment or weakened physical condition.

"In order for a workman to recover compensation it is not necessary that he must have been in perfect health or free from disease at the time he received the injury.

"It is claimed by the defendant here that the disability of the plaintiff is the result of ailments and infirmities which he had before he was injured. Even though you should believe from the evidence that the plaintiff's disability is due in part to his physical condition before his injury, still, if you find that his prior condition was materially aggravated by injuries suffered by accident arising out of and in the scope of his employment, which resulted in his disability, then your verdict must be for the claimant.

"A person suffering from a pre-existing physical condition who is disabled by an injury proximately arising out of his employment is entitled to compensation even though a normal man would not have been so adversely affected by such event."

A review of the evidence satisfies us it lends substantial support to the finding, within the verdict, that the unusual exertion experienced by plaintiff in the early morning hours of the 8th day of January, 1952, was responsible for his condition as described by Sergeant Dennis and precipitated into acute activity the heart attack of January 9th which brought about the total, permanent, disability from which he was found to suffer. The instructions of the court, and they are not complained of here, told the jury they could return a verdict in plaintiff's favor if they found the essential facts just recited to exist. The early morning tour lasted 3 to 3½ hours. It found the party, on foot most of the time, traveling through the rough sand hills and arroyos, climbing fences and confronted by other natural objects of the terrain, seeking an ever elusive fugitive. The search ended with plaintiff's car "stuck" in the sand from which he felt compelled to dig it out with a shovel, carried in the car for the purpose.

All these exertions, especially the digging out of the car, the jury must have felt combined to bring about the state of exhaustion in which Sergeant Dennis found plaintiff on returning to the car and eventuated into the acute heart attack the next day. This tour as head of the searching party was unusual, extraordinary and emergent in so far as the normal, everyday performance of plaintiff's duties was concerned. The medical experts were of the opinion that the exertion mentioned precipitated the attack. The jury concurred with the doctors in the belief that it did. We are unable to say they were not warranted in doing so. The conflict in the testimony on the vital issue is firmly resolved in plaintiff's favor by their verdict.

It is next urged by the defendants that the action has been prematurely brought in that the employer admittedly has continued payment of the plaintiff's regular salary or wage following his disability and was doing so at time of trial, thus furnishing the equivalent of compensation and payment of medical expenses, as they contend. As to the latter, medical expense, some items had been paid to the time of trial and some had not. Indeed, the plaintiff had given his note to the Presbyterian Hospital to cover his bill there. It may be admitted as pointed out by counsel for defendants, that "all of the testimony concerning payment of medical bills reviewed the situation after litigation had begun, rather than at time of filing the claim." Furthermore, defendants frankly admit

there was no payment of compensation benefits *as such* by either employer or insurer and they then pose this question, to wit:

" * * * we therefore have presented the question of whether the payment of the regular salary was in lieu of compensation benefits until such time as the payments were discontinued or whether the insurer herein was required under the compensation act to make compensation benefit payment, upon its determination of liability therefor, in addition to the regular salary payments being made by the employer."

The record before us discloses a hard fought contest in the court below over the major question whether there was any liability at all on the part of employer, not because of any question about employer being subject to the Workmen's Compensation Act (See 1941 Comp. § 57–910), not over any doubt about plaintiff's disability or the extent of it; but over the single question whether his disability was occasioned "by accident arising out of and in the course of his employment" within the true intendment of the Act. The defendants urged with great vigor below and have argued with much force here that his disability was caused by disease, not by accident.

Our greatest difficulty in declaring a result in this case has been in resolving that major question. We think we have resolved it correctly under prior decisions of this Court. To send the matter back now for a retrial on the ground that the action had been prematurely brought, unless for compelling jurisdictional reasons, would appear to us to be a sacrifice of substance to form. Fortunately, we see no jurisdictional reason compelling such action. Admittedly, the case of George v. Miller & Smith, Inc., 54 N.M. 210, 219 P.2d 285, does not present a parallel case and compels no such result. The defendants themselves concede as much in closing their argument of this point in their brief in chief with the virtual request, to wit:

"At the least, the matter of continuation of regular wages and the effect thereof upon liability for compensation benefits needs clarification in this jurisdiction for the guidance of all persons directly or indirectly affected by the Workmen's Compensation Act in force in this state."

It is argued by plaintiff that were the continued payment of salary or wages declared the equivalent of compensation due under the law in this regard, limitations might run on the claim for compensation and a claimant could find himself barred. They also argue that humanitarian reasons might prompt the continuation of salary or wages for some undetermined period. So viewed, they would

place it in the category of a gratuity or a sentimental gesture. We decline to hold that the continued payment of plaintiff's salary amounted to payment of compensation so as to suspend his right under the Act to sue. Compare, International Harvestor Co. v. Industrial Commission, 410 Ill. 543, 103 N.E.2d 109, 112.

 The plaintiff's counsel have asked that he be given an allowance for the benefit of his attorneys for services rendered in this Court. An allowance on this account in the sum of $750 will be granted him. In addition, by cross-appeal, the plaintiff seeks to increase the award of $1,750 made in the trial court for the benefit of his attorneys for services there. This was a matter of discretion with the trial court and we find no abuse of that discretion. This application will be denied.

Finding no error, the judgment of the trial court will be affirmed.

It Is So Ordered.

McGHEE, COMPTON and LUJAN, JJ., concur.

SEYMOUR, J., not participating.

On Rehearing.

SADLER, Chief Justice.

The Attorney General, appearing as amicus curiae, has suggested a rehearing.

He does so in order to point out that, as the record stands, judgment was taken against the state as well as the insurer. The state was the employer, to be sure, through its arm or agency, the defendant, New Mexico State Police. But the fact that it was being subjected to judgment went unnoticed when our opinion was filed.

 The claimant (appellee) resists the suggestion of amicus curiae that the judgment should be vacated in so far as it awards recovery against the state. His counsel make the contention that the state has in fact consented to be sued under the provisions of the Workmen's Compensation Act. But we find in the Act no express consent by the state to be sued and the consent is not to rest on implication. Unquestionably, the suit as to the employer is one against the state. New Mexico State Highway Department v. Bible, 38 N.M. 372, 34 P.2d 295, and Parr v. New Mexico State Highway Department, 54 N.M. 126, 215 P.2d 602. See, also, Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027; Arnold v. State 48 N.M. 596, 154 P.2d 257; and Vigil v. Penitentiary of New Mexico, 52 N.M. 224, 195 P.2d 1014.

The Attorney General as amicus curiae having called to our attention the matter of the judgment against the state and reminded us of its invalidity, the cause is considered as if upon rehearing. So con-

·sidered and on our own motion we rule that the judgment of the lower court against the state should be set aside as void but, other-wise, to stand affirmed.

It is so ordered.

McGHEE, COMPTON and LUJAN, JJ., concur.

SEYMOUR, J., not participating.