313 P.2d 1055

Mrs. Jose P. SANCHEZ, widow of Jose P. Sanchez, deceased, Helen A. Sanchez, Ida A. Sanchez, Joseph P. Sanchez, Jr., and Thomas R. Sanchez, minor children of Jose P. Sanchez, deceased, Claimants-Appellees,

v.

BOARD OF COUNTY COMMISSIONERS, BERNALILLO COUNTY, New Mexico, Employer; Mountain States Mutual Casualty Company, Insurer, Defendants-Appellants.

No. 6166.

Supreme Court of New Mexico.

June 20, 1957.

Simms, Modrall, Seymour, Sperling & Roehl, Thomas J. Smiley, Albuquerque, for appellants.

Smith, Kiker, Spiess & Beasley, Irving E. Moore, Albuquerque, for appellees.

SADLER, Justice.

The basic question for our determination on this appeal is whether there is substantial evidence to support the jury's verdict that the husband of plaintiff (appellee) suffered an accidental death arising out of and in the course of his employment by defendant-employer. The latter as an appellant before this Court challenges as erroneous the judgment entered on the verdict so returned at the trial.

The decedent, a man of goodly size, weighing more than 200 pounds, reported for work on a new job as a day laborer, at the commodity warehouse of his employer, the Board of County Commissioners of Bernalillo County, on the morning of July 18, 1955. The work in hand was the unloading from a railway box car on a siding opposite the warehouse of boxes of packaged cartons of powdered milk and stacking them inside the warehouse.

Each case of the powdered milk weighed $59\frac{1}{2}$ pounds and the process of removing them from the box car, separated by several feet from the open door of the warehouse, required the services of a work crew of, at least, four men. Two of them, operating from inside the box car, would place the boxes on a tilted conveyor on which the boxes would slide toward the open door of the warehouse. As each box arrived opposite the door, the two workmen waiting inside the warehouse would stoop over, each pick up a box and carry it a short distance away where the boxes were deposited in stacks to await use. Both in receiving and depositing the cases, some stooping or bending was required, the distance required in the process progressively decreasing as the size of a stack grew with the adding of boxes.

The decedent, along with his fellow workmen, began the job of picking up, each man to a box, and carrying them a short distance, where the cases were stacked inside the warehouse. Decedent had thus moved three or four boxes when, attempting to pick up still another, he was

-seen by the foreman to falter and fall over on his side. Some of his fellow workmen, including the foreman, gathered around and offered help. At first, the decedent complained of being sick, thought he had eaten something that had disagreed with him, was pale and sweating, and called for a drink of water which one of his co-laborers brought him.

He was soon removed to a pile of sacks where he lay down for a time and then was carried to his car, parked nearby, in which he rested the greater part of the morning. After being conducted to his car, upon visits to him by some of the employees, he was found to be vomiting, continued pale and was still sweating. About 11:30 a. m., a fellow workman drove him home in decedent's car. En route he complained of a pain in his head and chest and continued to sweat and remained pale. He entered his home with his eyes closed, moaning. After getting him in his home, he commenced to turn blue, whereupon his wife had him removed to the hospital. Upon arrival there he was found to be dead.

The decedent was twice married, being the father of 11 children by his first wife from whom he was divorced in 1942. The surviving wife, plaintiff herein, and the four minor children by her, were found to be dependents of decedent and the beneficiaries of whatever compensation should be adjudged due them by reason of his death.

During his lifetime the decedent was employed as a day laborer by various employers. Much of the time he was unemployed. In 1949, he got a job as a janitor for St. Joseph's Hospital in Albuquerque, where he worked for about a year, then quit. Next, we find him employed on a road gang by county highway department. This was in 1951. He continued in this employment until February, 1954, when he was laid off.

Remaining idle for a few months, he next shows up with a job with City of Albuquerque as special patrolman at a school crossing for $110 per month. School out, he worked as a gardener in the city parks, again drawing $110 per month. Upon the reopening of school in the fall of 1954, he resumed his employment as special patrolman at a school crossing. This job occupied him until school was out in spring of 1955, at which he continued to draw as salary the sum of $110 per month. He remained out of work from time school was out in spring of 1955 until he secured the job in which he met his death, soon after entering upon his duties on the morning of July 18, 1955.

Apparently, the decedent who had lived the outdoor life of a rancher prior to moving to Albuquerque in 1949, had enjoyed good health until August of the year, 1952, when he began to complain of headaches and dizziness. At this time his wife was employed at St. Joseph's Hospital, and being personally acquainted with several doc-

tors, she made appointments for him with several of them, at least, two of whom thought he had some heart trouble. The wife, plaintiff herein, being somewhat concerned, possibly by reason of knowledge acquired during her employment at a hospital, made an appointment with a fourth physician, a heart specialist, for September 21, 1952.

This physician, Dr. John Dettweiler, testified at the trial that on his first examination of decedent he discovered he had suffered from a myocardial infarction. The effect of such attacks, so Dr. Dettweiler testified, is permanent, and that patients who had had such attacks, ordinarily, are kept from doing any work involving manual labor. It thus was established by the testimony of the heart specialist that at the time of his fatal attack, the decedent was a sufferer from a pre-existing heart ailment which had continued for approximately three years prior thereto, if not longer.

With a background in the facts as recited above, we are brought face to face with the critical issue whether the facts surrounding the death of decedent afford a basis for the jury's verdict. In other words, is there substantial support in the evidence for the jury's finding that the death of decedent resulted from an accidental injury suffered in the course of his employment and arising out of it?

It cannot be questioned but that there is ample evidence in the record the decedent, at time he commenced work for his employer, to be stricken within the first hour, if not half hour, of such employment, suffered from a pre-existing heart ailment. Dr. Dettweiler, the heart specialist, who had examined him in September, 1952, and discovered he was then suffering from a prior heart ailment, was asked a hypothetical question describing the facts surrounding decedent's attack, —the lifting in progressive sequence of three or four boxes weighing around 50 pounds (actually shown to be 59½ pounds), a physical collapse followed by a fainting condition, sweating, vomiting, and ending in death the same day,—gave it as his unqualified opinion that it was "most likely" the exertion of lifting the boxes precipitated the heart attack from which death occurred.

Likewise, Dr. Levin, an expert medical witness, upon facts in evidence embraced in a hypothetical question, gave it as his opinion that decedent had suffered a coronary occlusion (a heart attack) on the day of his death and that exertion from lifting the boxes was the inducing cause of the attack which resulted in his death. The jury, following instructions from the court touching the issue, returned into court a general verdict and special verdicts in answer to interrogatories submitted, as follows:

"Verdict

"We, the Jury, find the issues in favor of the Claimant and against the Defendants.

"s/ Harold O. John, Foreman.

"Special Interrogatory No. 1

"1. Did Jose P. Sanchez die from an injury arising out of and in the course of his employment?

"Answer Yes or No  Yes

"2. Was the death of Jose P. Sanchez proximately caused by an accident arising out of and in the course of his employment?

"Answer Yes or No  Yes

"3. If your answer to Special Interrogatory No. 2 is in the affirmative, please state the accident which proximately caused said death and arose out and in the course of his employment.

"Answer  Exertion caused by lifting.

"s/ Harold O. John, Foreman"

It was upon such verdicts that the trial court rendered judgment in favor and for the benefit of plaintiff and her four minor children for the recovery from defendants of $24 per week for 550 weeks, commencing on July 18, 1955, together with an award of attorney's fees in the sum of $2,250 for benefit of her attorneys, plus funeral expenses in the sum of $250. It is this judgment of which the defendants complain before us, directing their basic challenge to same upon the ground there is no substantial evidence to show the decedent suffered other than an ordinary death from natural causes. This is but another way of saying the plaintiff failed to show by substantial evidence that the decedent's death resulted from an accident arising out of and in the course of his employment.

█ █  If, however, in the course of his employment the decedent by exertion strained himself to the point a pre-existing heart ailment was reactivated, resulting in a blockage, or occlusion, we find present every element necessary to denominate his injury accidental. Christensen v. Dysart, infra. Certainly, it was "unlooked for," "unintended," and "unexpected." Had it been otherwise, the workman's death would assume a suicidal aspect. His death was reported by the employer to the defendant insurer as an accident, a fact entitled to legitimate consideration by the jury in determining whether it was so or not. Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992. We have no difficulty in seeing in the death involved a compensable accidental injury. Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342; Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P.2d 333; Gilbert v. E. B. Law & Son, Inc., supra; Hathaway v. New Mexico State Police, 57 N.M. 747, 263 P.2d 690; Teal v. Potash Co. of America, 60 N. M. 409, 292 P.2d 99.

Counsel for the defendants argue vigorously that a heart attack which results from exertion expended by a workman in performing his usual and ordinary duties; under usual and ordinary circumstances of his work, may not be made the subject of a workmen's compensation award. It is their view that in a death under the circumstances here shown, the injury must result from some unusual, extraordinary or emergent situation to give it character as an accident. And they are able to find statements in one or more of our earlier cases, such as Christensen v. Dysart, 42 N. M. 107, 76 P.2d 1, and Hathaway v. New Mexico State Police, supra, from which, unexplained, at least, they may draw some measure of comfort. However, it seems now too well settled to be open to controversy by decisions since Christensen v. Dysart, supra, and decisions both before and since the Hathaway case, supra, that as said in Gilbert v. E. B. Law & Son, Inc., supra 60 N.M. 101, 287 P.2d 996:

"* * * It is not necessary that a workman be subjected to an unusual or extraordinary condition, not usual to his employment, for an injury sustained to be termed an accidental one under our law. Webb v. N. M. Pub. Co. and Barton v. Skelly Oil Co. [47 N.M. 127, 138 P.2d 263], both supra."

See, in addition, Stevenson v. Lee Moor Contracting Co., supra; Webb v. N. M. Pub. Co., supra, and Teal v. Potash Company of America, supra.

In the Stevenson case, supra, we quoted extensively from the earlier English case of Fenton v. Thorley, [1903] A.C. 443. After a lengthy review of the decisions including Fenton v. Thorley, we said:

"We are satisfied with the conclusions of these courts, and hold that 'injury by accident' means nothing more than an accidental injury, or an accident, as the word is ordinarily used. It denotes 'an unlooked for mishap, or an untoward event which is not expected or designed.'" [45 N.M. 354, 115 P.2d 350.]

It is interesting to note that in the Stevenson case, supra, this court rejected the argument renewed in the case at bar by defendants that the term "injury by accident" means there must always be an accident separate and apart from the injury, and rejected as well the leading case cited to support such an interpretation, namely, Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017. After adverting to the fact that Colorado Supreme Court, from which state in the Stevenson case it was said we originally adopted our Workmen's Compensation Act, had prior thereto in Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A.L.R. 107, favored a construction in conformity with that given the Act in Fenton v. Thorley, we went on to say

although that fact alone would justify our following their construction, "yet being satisfied that such construction is gramatically correct; and as it is more in accord with the spirit of the Workmen's Compensation Acts, it should be followed by us," adding:

"Such is the weight of authority in this country."

We also find this significant language in this court's opinion in the Stevenson case, supra, to wit:

"When an injury results from some fortuitous happening, such as the breaking of machinery, explosions, collisions, etc., the accidental nature has never been questioned. But in cases where there was no accident separate and distinct from the injury that caused it, the courts are not in accord. Such are strains causing back injuries, ruptures, blood clots, hemorrhages, etc.; ordinarily the unintended result of an intentional act of the person injured. *These injuries are also held compensable by all courts so far as we are advised, when received in the course of the workmen's employment, since Fenton v. Thorley.*" (Emphasis ours.)

It is true enough, as we are reminded by plaintiffs' counsel in the Stevenson case, the court found it unnecesary to determine there whether a workman injured while performing his labor under ordinary conditions of his employment is compensable under our Act.

In the Webb case, the court again in an exhaustive opinion reviewing cases under our own and other Acts, as counsel for plaintiffs point out, answered the question left unanswered by the Stevenson case by squarely holding an injury could be "accidental," though suffered while the workman was performing his usual and ordinary duties, under usual and normal conditions, provided only there appear in the facts attending the injury the "unexpected," "unlooked for" and "unintended" mishap which gives it character as such. In this very case, we cited approvingly Cavanaugh v. Murphy Varnish Co., 130 N.J.L. 107, 31 A.2d 759, on facts not unlike those here present. We said [47 N.M. 279, 141 P.2d 343]:

"* * * The workman was unloading cartons of paint from a truck two days after he was employed. While lifting one he felt a pain in his chest and began to cough. In a few minutes he suffered a lung hemorrhage and was found upon examination to have tuberculosis. The court stated it as an established fact in the case that the employee was suffering from tuberculosis at the time of commencing his employment. The contention was that, to be a compensable accident, the strain suffered must have been the result of an unusual effort, and not one ordinari-

ly required in the performance of his usual work. The court cited Molnar v. American Smelting & Refin. Co., 128 N.J.L. 11, 24 A.2d 392, 393, in which it was held that it was not necessary to show unusual effort or exertion, although it did appear in that case that 'the degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart.' "

And, finally, in our own somewhat recent case of Teal v. Potash Company of America, supra, a heart case, after pointing out the inconsistency of holding accidental an injury resulting from strain in meeting an emergent situation, suddenly encountered, and denying it where caused by strain incident to exertion to the point of exhaustion in the performance of one's ordinary duties in the usual way, we said:

"There would be neither consistency nor logic in such contrary views. After all, it is the physical effort employed, the straining of oneself to the point of exhaustion, in either case, which produces the 'unintended,' the 'unexpected,' and the 'unlooked for' result enabling the courts to characterize the injury or death as accidental. The physical exertion producing the strain on the heart is the same in either case and, obviously, had the workman exerting known or expected the result which followed, he would never have so exerted himself." [60 N.M. 409, 292 P.2d 103.]

As indicated above, counsel for defendants place much reliance not only upon Christensen v. Dysart, supra, and as well on the Hathaway case to support their claim the injury, to be accidental, must have been the result of unusual exertion and could not arise where the workman was performing his normal duties in a usual and ordinary fashion, even though resulting from exertion and strain. We agree with counsel for plaintiffs that in so far as the Christensen case so holds it has been superseded by later decisions, particularly the Webb case.

■ The Hathaway case is somewhat more difficult to explain. Apparently, in that case we did rely upon the unusual exertion factor and, understandably, since that was an "unusual exertion" case. Being so we, of course, did not need to go further than to apply the universal rule applicable in such cases, as demonstrated by Christensen v. Dysart. There was thus no necessity to place reliance on the rule of the Webb case which, apparently, either for that reason we did not notice, or as seems more likely, simply overlooked. Certainly, when the trial court in the Hathaway case instructed the jury:

"In order for you to find for the claimant herein, you must find by a pre-

ponderance of the evidence that his disability, if any, occurred as a result of an untoward event occurring during the performance of his duties as Captain of the State Police Force. You must find some unusual, exceptional or extraordinary exertion or other activity performed by the Claimant while engaged in his duties as such captain of the State Police Force. The question of a pre-existing condition has otherwise been explained to you by other instructions."

it was operating right in the teeth of the doctrine of the Webb case in this particular. The jury having found for the plaintiff, the foregoing instruction was not attacked on appeal and thus became the "law of the case." Marchant v. McDonald, 37 N.M. 171, 20 P.2d 276; Bell v. Carter Tobacco Co., 41 N.M. 513, 71 P.2d 683.

An interesting aftermath to the Hathaway case is to be found in a case tried in the United States District Court for the District of New Mexico, Tomlin v. Stewart Drilling Co. (No. 3238) on the civil docket of said court (verdict rendered January 17, 1957). In that case the wife claimed compensation for the death of her husband by a heart attack incurred while performing his usual duties as a derrick man on an oil well drilling rig. Judge Waldo H. Rogers (the same judge who sat as a state district court judge in the trial of the Hathaway case, supra, and instructed the jury that in order for a heart attack to be compensable that it be caused by unusual strain or exertion), gave the following charge to the jury, in the federal case above, applying New Mexico law:

"You are instructed that an accidental injury may be received by a workman while performing his labor under the usual and ordinary conditions of his employment.

"You are instructed that where the duties of the employment call for a quality and quantity of exertion which actually is the immediate precipitating factor to the death of a workman by a heart attack, it is compensable."

One of the leading cases cited in an annotation which follows the report of same in 60 A.L.R. 1293, namely, case of Brown, 123 Me. 424, 123 A. 421, 422, 60 A.L.R. 1293, involved a heart case, due to shoveling snow even though similar to work performed by him on other days, was a compensable injury. Meeting the contention that the workman's injury could not have been accidental since he was only doing his usual work, the court said:

"If a laborer performing his usual task, in his wonted way, by reason of strain, breaks his wrist, nobody would question the accidental nature of the injury. If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident."

We can well realize how the employer and insurer in a case of this kind, when the workman is stricken so soon after taking up the performance of his duties, literally almost in the act of doing so, may well and, understandably, be disposed to question the validity of the claim. They cite several possibilities which might have caused the death, other than the one which actually did, according to the jury's finding, such as the eating of a heavy meal, or watermelon, the day before. Of course, the decedent might have suffered a fatal heart attack as he got out of his car, or walked from it toward his place of work. In such event, liability would not exist, obviously.

■ But it was not the duty of the claimants to exclude all other possibilities which could and might have caused death. They were only called upon to prove the most probable cause. Clower v. Grossman, 55 N.M. 546, 237 P.2d 353. That they did so in a manner which fully satisfied the jury, by producing substantial evidence of the cause of death as found, we entertain no doubt. If, instead of death from strain on the heart, the decedent had died within the same period after starting to work by a blow on the head from falling debris stored in the warehouse, who would question the accidental character of his death? If, as the jury found, the decedent died from a heart attack caused by the strain imposed by lifting four 59½-pound boxes over a fifteen-minute period, it was no less accidental because occurring so soon after commencing work.

It is urged upon us by counsel for defendants that the trial court erred in failing to give its requested instructions Nos. 15 and 25, both dealing with the proposition that the Workmen's Compensation Act does not make the employer an insurer of the employee against injury or death during the hours of employment and that under the law it is not every injury that is compensable. We have examined the instructions requested in the light of those given, and think the court did not err in refusing these requests. See Schultz v. Young, 37 N.M. 427, 24 P.2d 276; Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047; Jones v. Citizens Bank of Clovis, 58 N.M. 48, 265 P.2d 366. What we have said touching error in the instructions just mentioned applies with equal force to claims of error relative to action on other requested instructions at the trial. We see no error in view of the instructions given.

■ Complaint is made, also, that error was committed in connection with the submission to the physicians, Doctors Dettweiler and Levin, of hypothetical questions. First, it is claimed the trial court should not have permitted the propounding of such questions until all the evidence upon which they were based had been introduced. When the objection on this ground was first interposed, counsel for plaintiff, mindful of the rule that a hypothetical

question could not be based upon facts not in evidence, assured the court that such evidence would be produced before the trial ended. Thus assured the court permitted the questions to be propounded.

We see no error in the ruling of the trial court in this connection. Nor are we persuaded by the argument of counsel for defendants that the plaintiffs did not fairly comply with the assurances given the court by producing testimony to meet the test imposed upon them by the court. A careful review of the evidence bearing on this claim of error satisfies us the plaintiffs complied, substantially, with their promise to the court in this behalf.

■ Nor do we think there was any abuse of the trial court's discretion in permitting plaintiffs to put on as rebuttal witnesses the minor children touching the issue of dependency that had been injected by cross-examination of the mother of the minors, one of the plaintiffs, and the direct examination of the witness, Josephine Corey. The same observation applies, viz., no abuse of discretion, as to the court's refusal to permit cross-examination of the minor children as witnesses on matters not germane to their direct examination. See State v. Wilcoxson, 51 N.M. 501, 188 P.2d 611; Lillibridge v. Coulter, 52 N.M. 105, 192 P.2d 315.

Other errors are argued touching basis for computing compensation payments, form of the judgment in failing to provide for contingencies which from time to time might, and some of which would, affect the amount or duration of compensation, amount of attorneys fees and costs. We have given careful consideration to all these claims of error and believe none of them is meritorious. It would profit neither the bench nor the bar for us to take up and discuss each of such claimed errors in detail and we see no occasion to do so.

We have been asked by counsel for plaintiffs (appellees) to award attorney's fees in their favor in this court for services rendered on the appeal. Considering the whole matter, the labor expended and the results achieved we think a reasonable allowance on this account would be the sum of $750, for which an award is hereby made.

It follows from what has been said that the judgment of the trial court is correct and should be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

KIKER, J., not participating.